Eloy OZUNA, Appellant,

v.

The STATE of Texas, Appellee.

No. 13–05–737–CR.

Court of Appeals of Texas,
Corpus Christi–Edinburg.

Aug. 10, 2006.

Noel Gonzalez, The Law Office of Noel Gonzalez, Pharr, for appellant.

David Nowlin, Asst. Crim. Dist. Atty., Rene A. Guerra, Crim. Dist. Atty., Edinburg, for appellee.

Before Chief Justice VALDEZ and Justices YAÑEZ and CASTILLO.

## OPINION

Opinion by Justice CASTILLO.

A jury convicted appellant Eloy Ozuna of aggravated sexual assault of a child[1] and assessed punishment at ten years' confinement in the Institutional Division of the Texas Department of Criminal Justice and a $10,000 fine. The incarceration portion of the sentence was suspended for a term of ten years community supervision. Ozuna appeals. We affirm.

## I. BACKGROUND

The child, M.G., described as a hyperactive child who communicated by using short sentences and demonstrating, repeated an outcry statement to his maternal grandmother, a police officer, and an intake worker with the Texas Child Protective Services Department.[2] In his outcry, M.G. stated that Ozuna molested him by digital penetration of the anus. On physical examination of the child, a forensic nurse examiner did not rule out sexual abuse.

## II. POINTS OF ERROR PRESENTED

By three points of error, Ozuna argues the following: (1) the trial court abused its discretion in finding M.G. competent to testify; (2) he was denied effective assistance of counsel; and (3) the evidence is legally and factually insufficient to support the conviction.

## III. SUFFICIENCY OF THE EVIDENCE

By his third point of error, Ozuna asserts that the evidence was legally and factually insufficient to prove the essential elements of the offense beyond a reasonable doubt. In particular, Ozuna maintains that the evidence to prove he caused his finger to penetrate the anus is so weak that it cannot sustain the finding of guilt. He focuses his argument on M.G.'s inability to communicate, his failure to outcry to the forensic interviewer and the examining nurse, and the absence of physical evidence. The State responds that M.G.'s testimony alone is sufficient to sustain the conviction and corroborating evidence adduced at trial as to his outcry also proved the essential elements of the offense.

### A. Legal Sufficiency Standard of Review

A legal-sufficiency challenge calls on us to review the relevant evidence in the light most favorable to the verdict, and then determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Escamilla v. State*, 143 S.W.3d 814, 817 (Tex. Crim.App.2004) (citing *Jackson v. Virgi-*

1. See TEX. PEN.CODE ANN. § 22.021(a)(1)(B)(i) (Vernon Supp.2005). The indictment alleged that on or about December 5, 2003, Ozuna intentionally and knowingly caused digital penetration of the anus of M.G., a child.

2. Ordinarily, the statements that M.G. made to the three individuals would be inadmissible hearsay at trial. See TEX.R. EVID. 802. However, an "outcry" statement is an exception to the hearsay rule for the first report of sexual abuse that the victimized child makes to an adult. See TEX.CODE CRIM. PROC. ANN. art. 38.072, 2(a) (Vernon 2005) (applicable in the trial of an adult); *Garcia v. State*, 792 S.W.2d 88, 93 (Tex.Crim.App.1990).

*nia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)); *Swearingen v. State,* 101 S.W.3d 89, 95 (Tex.Crim.App.2003) (en banc); *Johnson v. State,* 23 S.W.3d 1, 7 (Tex.Crim.App.2000) (en banc). This standard is meant to give "full play to the [jury's] responsibility fairly" to "draw reasonable inferences from basic facts to ultimate facts." *Sanders v. State,* 119 S.W.3d 818, 820 (Tex.Crim.App.2003) (quoting *Jackson,* 443 U.S. at 319, 99 S.Ct. 2781). We consider all the evidence that sustains the conviction, whether properly or improperly admitted. *Conner v. State,* 67 S.W.3d 192, 197 (Tex.Crim.App.2001) (citing *Garcia v. State,* 919 S.W.2d 370, 378 (Tex.Crim.App.1994) (en banc)). Similarly, we consider all the evidence that sustains the conviction, whether submitted by the prosecution or the defense, in determining the legal sufficiency of the evidence. *King v. State,* 29 S.W.3d 556, 562 (Tex.Crim. App.2000) (en banc); *Cook v. State,* 858 S.W.2d 467, 470 (Tex.Crim.App.1993) (en banc). In this review, we are not to re-evaluate the weight and credibility of the evidence, but rather, we act only to ensure that the jury reached a rational decision. *Muniz v. State,* 851 S.W.2d 238, 246 (Tex. Crim.App.1993) (en banc).

The legal sufficiency of the evidence is measured against the elements of the offense as defined by a hypothetically correct jury charge for the case.[3] *Malik v. State,* 953 S.W.2d 234, 240 (Tex.Crim.App. 1997). This standard of legal sufficiency

ensures that a judgment of acquittal is reserved for those situations in which there is an actual failure in the State's proof of the crime, rather than a mere error in the jury charge submitted. *Id.* We then determine if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson,* 443 U.S. at 319, 99 S.Ct. 2781; *Johnson,* 23 S.W.3d at 7.

If we reverse a criminal case for legal insufficiency, we reform the judgment of conviction to reflect conviction for a lesser offense only if a jury charge on the lesser offense was either submitted or requested, but denied. *Collier v. State,* 999 S.W.2d 779, 782 (Tex.Crim.App.1999). Otherwise, we vacate the judgment of conviction for legal insufficiency and order a judgment of acquittal. *Swearingen,* 101 S.W.3d at 95.

### B. Factual Sufficiency Standard and Scope of Review

A factual-sufficiency review begins with the presumption that the evidence is legally sufficient under *Jackson,* 443 U.S. at 319, 99 S.Ct. 2781. *Conner,* 67 S.W.3d at 198; *Wardrip v. State,* 56 S.W.3d 588, 591 n. 3 (Tex.Crim.App.2001). This Court measures the factual sufficiency of the evidence in this case against a hypothetically correct jury charge. *Adi v. State,* 94 S.W.3d 124, 131 (Tex.App.-Corpus Christi 2002, pet. ref'd); *see Malik,* 953 S.W.2d at 240.

---

**3.** A hypothetically correct jury charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or restrict its theories of liability, and adequately describes the particular offense. *Malik v. State,* 953 S.W.2d 234, 240 (Tex.Crim.App.1997); *Cano v. State,* 3 S.W.3d 99, 105 (Tex.App.-Corpus Christi 1999, pet. ref'd). A hypothetically correct jury charge does not simply quote from the controlling statute. *Gollihar v. State,* 46 S.W.3d 243, 254 (Tex.Crim.App.

2001). Its scope is limited by the statutory elements of the offense as modified by the charging instrument. *See Fuller v. State,* 73 S.W.3d 250, 254 (Tex.Crim.App.2002) (Keller, P.J., concurring) (quoting *Curry v. State,* 30 S.W.3d 394, 404 (Tex.Crim.App.2000)). *Malik* flatly rejects use of the jury charge actually given as a means of measuring sufficiency of the evidence. *See Gollihar,* 46 S.W.3d at 252. *Malik* controls sufficiency of the evidence analysis even in the absence of alleged jury charge error. *Id.* at 255.

We are constitutionally empowered to review the judgment of the trial court to determine the factual sufficiency of the evidence used to establish the elements of the charged offense. *Zuniga v. State*, 144 S.W.3d 477, 484–85 (Tex.Crim.App.2004); *Johnson*, 23 S.W.3d at 6. In determining the factual sufficiency of the elements of the offense, we view all the evidence neutrally, not through the prism of "the light most favorable to the prosecution." *Johnson*, 23 S.W.3d at 6–7 (citing *Clewis v. State*, 922 S.W.2d 126, 129 (Tex.Crim.App. 1996)). We set aside a finding of guilt only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Johnson*, 23 S.W.3d at 7. A clearly wrong and unjust finding of guilt is "manifestly unjust," "shocks the conscience," or "clearly demonstrates bias." *Prible v. State*, 175 S.W.3d 724, 731 (Tex.Crim.App.2005) (quoting *Santellan v. State*, 939 S.W.2d 155, 164 (Tex.Crim.App. 1997)); *Rojas v. State*, 986 S.W.2d 241, 247 (Tex.Crim.App.1998).

In conducting a factual sufficiency review, we review the fact finder's weighing of the evidence. *Johnson*, 23 S.W.3d at 7 (citing *Clewis*, 922 S.W.2d at 133). We review the evidence that tends to prove a material disputed fact and compare it with evidence that tends to disprove it. *Johnson*, 23 S.W.3d at 7. We are authorized to disagree with the fact finder's determination. *Id.* However, we approach a factual-sufficiency review with appropriate deference to avoid substituting our judgment for that of the fact finder. *Id.* Our evaluation should not intrude substantially on the fact finder's role as the sole judge of the weight and credibility given to witness testimony. *Id.* Thus, in performing a factual-sufficiency review, we are mindful that the fact finder is the exclusive judge of the credibility of witnesses and the weight to be given testimony. Tex.Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); *Adelman v.*

*State*, 828 S.W.2d 418, 423 (Tex.Crim.App. 1992); *Butts v. State*, 835 S.W.2d 147, 151 (Tex.App.-Corpus Christi 1992, pet. ref'd).

The fact finder may believe some witnesses and refuse to believe others. *Esquivel v. State*, 506 S.W.2d 613, 615 (Tex. Crim.App.1974). It also may accept portions of a witness's testimony and reject others. *Johnson*, 23 S.W.3d at 7; *Butts*, 835 S.W.2d at 151. We always remain aware of the fact finder's role and unique position, a position we are unable to occupy. *Johnson*, 23 S.W.3d at 9.

Exercise of our authority to disagree with the fact finder's determination is appropriate only when the record clearly indicates our intervention is necessary to stop manifest injustice. *Id.* When an appellant challenges the factual sufficiency of the elements of the offense, we ask whether "a neutral review of all the evidence ... demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the jury's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof." *Zuliani v. State*, 97 S.W.3d 589, 593–94 (Tex.Crim.App.2003) (quoting *Johnson*, 23 S.W.3d at 11); *see Swearingen*, 101 S.W.3d at 97.

In conducting a factual sufficiency review in an opinion, we "show our work" when we consider and address the appellant's main argument for urging insufficiency of the evidence. *Sims v. State*, 99 S.W.3d 600, 603 (Tex.Crim.App.2003); *Johnson*, 23 S.W.3d at 9; *Manning v. State*, 112 S.W.3d 740, 747 (Tex.App.Houston [14th Dist.] 2003, pet. denied); *see* Tex.R.App. P. 47.1. This practice benefits the parties, maintains the integrity of the justice system, and improves appellate practice. *Sims*, 99 S.W.3d at 603; *Manning*, 112 S.W.3d at 747. If we reverse a criminal case for factual insufficiency, we

vacate the judgment of conviction and remand for a new trial. *See Clewis,* 922 S.W.2d at 133–34; *see also Swearingen,* 101 S.W.3d at 97.

### C. Testimony of a Child Sex Abuse Victim

The testimony of a child sexual abuse victim alone is sufficient to support a conviction for aggravated sexual assault. TEX.CODE CRIM. PROC. ANN. art. 38.07 (Vernon 2005); *see Garcia v. State,* 563 S.W.2d 925, 928 (Tex.Crim.App.1978). Courts give wide latitude to testimony given by child victims of sexual abuse. *See Villalon v. State,* 791 S.W.2d 130, 134 (Tex.Crim. App.1990) (en banc). The victim's description of what happened to him need not be precise, and he is not expected to express himself at the same level of sophistication as an adult. *Id.* A child victim need not testify to penetration, which the State may prove through circumstantial evidence. *See id.* However, the testimony of a child victim alone is sufficient evidence of penetration to support a conviction. *O'Hara v. State,* 837 S.W.2d 139, 141–42 (Tex.App.-Austin 1992, pet. ref'd). There is no requirement that the victim's testimony be corroborated by medical or physical evidence. *Garcia,* 563 S.W.2d at 928; *Kemple v. State,* 725 S.W.2d 483, 485 (Tex. App.-Corpus Christi 1987, no writ). Further, outcry testimony alone can be sufficient to sustain a conviction for aggravated sexual assault. *Rodriguez v. State,* 819 S.W.2d 871, 873–74 (Tex.Crim.App.1991); *Kimberlin v. State,* 877 S.W.2d 828, 831–32 (Tex.App.-Fort Worth 1994, pet. ref'd).

### D. The Elements of Aggravated Sexual Assault of a Child

The hypothetically correct jury charge against which we measure the legal and factual sufficiency of the evidence would ask the jury if Ozuna (1) on or about December 5, 2003, (2) intentionally or knowingly (3) caused penetration of the anus of M.G., (4) who was then a child under 14 years of age (5) by any means. *See* TEX. PEN.CODE ANN. § 22.021(a)(1)(B)(I) (Vernon Supp.2005).

### E. The Evidence at Trial

Six years old at the time of the offense, M.G. lived with his mother and her boyfriend, Ozuna. Since the age of three, M.G. spent weekends with his maternal grandmother, Guadalupe Cantu. On December 6, 2003, during one such visit, Cantu noticed that M.G. was acting in a manner she described at trial as "different." Cantu testified that M.G. was "sad and cried" when he explained to her what occurred. Pointing to his backside, M.G. told Cantu "it hurts." Cantu testified that M.G. described he was lying in bed watching cartoons on television when Ozuna molested him. Pressed during cross-examination as to M.G.'s exact words, Cantu described M.G.'s outcry as follows:

> [M.G.] put his hand on his backside and with the finger and showed me [with] the hand ... he told me ... that the finger was ... put in his butt ... it was hurting him. And I asked him, who did this to you? And he told me, you know, Eloy.

Cantu further testified that M.G. used the word "butt" to denote the rectal area and the child demonstrated with his left index finger what Ozuna did to him, indicating digital penetration. Cantu testified that, in 2003, M.G., a hyperactive child, was having problems with his speech and communicated by using three-word sentences and demonstrating by using hand signals. She testified she understood what occurred by what he told her and what he showed her. Cantu further testified that the child did not soil his underwear before

the outcry but did so after. She denied that he suffered from constipation.

The following day, Cantu took M.G. to the police department where they met with Officer Lance Werster. Officer Werster testified that M.G. was "hyperactive" during the meeting. Officer Werster testified that the child was able to communicate what happened to him and lifted his left index finger to show how Ozuna committed the assault. From his interview with M.G., Officer Werster was able to ascertain what happened to the child. Officer Werster further testified as follows:

Q. When you had a conversation with [M.G.], was he able to verbalize to you what had happened to him?

A. With—in short choppy sentences, yes.

Q. Did his grandmother Ms. Cantu start to intervene and—and get involved in—in helping him tell you what had—what had happened?

A. No, ma'am.

Q. So it was all what [M.G.] was telling you?

A. Yes.

As to the offense report he completed after interviewing M.G., Officer Werster testified that he wrote, "Put it in my butt" within quotation marks "[b]ecause those are the words from the child. .... He actually said those to me." He further testified that the child demonstrated an action Officer Werster interpreted "as being—the actual action of using the finger and putting it in the orifice."

M.G. was eight years old at the time of trial. He testified that he was lying watching television while his mother was "outside cleaning." M.G. testified he was wearing shorts and underwear. When Ozuna touched him, the shorts were at M.G.'s knees. At trial, M.G. lifted his left

index finger (as represented in the record) and testified that Ozuna "put it ... in butt" and it "hurt." M.G. further testified that, after the assault, Ozuna fell asleep. M.G. testified he was afraid to tell his mother and he was afraid of Ozuna.

Andrew Downing, employed with the Texas Department of Child Protective Services, testified that he met with M.G. on December 8, 2003 at the child's school. M.G. was "somewhat agitated" and spoke in "short and choppy responses." He testified M.G. made an outcry statement and Downing set up a videotaped interview of the child.

Forensic interviewer Rosie Mendoza testified that, on December 8, 2003, she interviewed M.G. and the interview was videotaped.[4] She described that M.G. was "extremely hyperactive." She testified she could not engage him because he was inattentive and not focused. She testified that he did not disclose anything that happened as to a sexual assault. The following colloquy ensued on direct examination:

Q. Is that common in a sexual assault case?

A. No, it's not unusual ... because if a child is abused and doesn't disclose, ... it doesn't mean that it didn't happen.

The videotape shows that M.G. was active during the interview. It also demonstrates the following colloquy between the forensic interviewer and M.G., who was six years old at the time:

Q. [M.G.], I would like to know, what's the reason you came to talk to me? Has something happened?

A. Yes.

Q. What happened?

4. The jury viewed the videotape, which was admitted in evidence.

* * *

Q. ... What are the boy's body parts nobody should see or touch?

A. The body.

Q. What are the parts nobody should see or touch?

A. Don't know.

Q. Okay. Listen, look at me. Which are the parts of the body that we cover with underwear?

A. Butt.

Q. Has somebody touched your butt with—has somebody done something to your butt? Has somebody looked at your butt?

A. People.

Q. Who?

A. People.

Q. What people? What happened to your butt?

A. People see me.

* * *

Q. Has somebody seen your butt or done something to your butt?

A. People [eliminate].

Q. People do [eliminate]. Yes, people do [eliminate]. Has anything happened to you?

A. No.

* * *

Q. [M.G.], if somebody touches you on this part of your body or asks you to do something, who are you going to tell?

A. Nobody.

After telling M.G. he should tell if inappropriately touched, Mendoza concluded the interview without further questioning.

More than two weeks later, sexual abuse nurse examiner Juana Cantu Cabrera examined M.G.[5] She testified that M.G. was "hyperactive." He would not communicate with her but did cooperate in the physical examination after an acquaintance of his in the office assisted. Cabrera testified that her conclusion after examining M.G. was "probable rectal penetration" due to quick dilatation of the suspected area which "may suggest sexual abuse." She explained that dilatation is the rapid opening of the area. She testified that the symptom occurred, "Because the body's been trained ... not to get traumatized anymore so just ... a light touch and it opens up. The body doesn't want to hurt anymore ... it's an involuntary response ... and it opens up quickly." Cabrera further testified that she had never seen such dilatation while the patient was placed in the two different positions during the examination, stating, "In this case, he rapidly dilatated on both positions."

On cross-examination, Cabrera testified she could not conclude that sexual assault occurred. She testified that other factors including constipation and medication for hyperactivity could cause the physical symptom she found. On re-direct examination, she testified that it is normal not to have physical findings in a sexual abuse case and explained that trauma to the rectal area heals quickly.

M.G.'s mother, Glenda Torres, testified she lived with and was married to Ozuna. She testified that, at two years old, M.G. was diagnosed as hyperactive and prescribed Ritalin, but he was not taking the medication in 2003. Torres further testified that M.G. always had problems communicating. Medical records admitted in evidence show M.G. has a speech impairment, was on medication for hyperactivity, and was undergoing speech therapy at the time of trial.

5. Cabrera testified she examined M.G. on December 22, 2003.

## F. Legal Sufficiency Analysis

■ Viewed in the light most favorable to the verdict, the evidence shows that three persons heard M.G.'s outcry. *See Escamilla*, 143 S.W.3d at 817. The jury heard that M.G. told his maternal grandmother, the reporting police officer, and the caseworker that Ozuna used his left index finger to penetrate his "butt." At the trial convened two years after his outcry, M.G. unequivocally articulated the same description as to what Ozuna did to him. We conclude that from the evidence a rational jury could have found beyond a reasonable doubt that Ozuna committed the offense of aggravated sexual assault of a child by digital penetration of the child's anus. *See* TEX.CODE CRIM. PROC. ANN. art. 38.07; TEX. PEN.CODE ANN. § 22.021(a)(1)(B)(i); *Garcia*, 563 S.W.2d at 928; *Villalon*, 791 S.W.2d at 134. We conclude the evidence is legally sufficient to sustain the conviction.

## G. Factual Sufficiency Analysis

■ Viewed in a neutral light, the same evidence we conclude is legally sufficient establishes the essential elements of aggravated sexual assault of a child. *Johnson*, 23 S.W.3d at 6–7. However, Ozuna argues that evidence contrary to the verdict renders the evidence factually insufficient to prove digital penetration of the anus. *See Zuniga*, 144 S.W.3d at 484–85. He directs us to the testimony of the examining nurse and the forensic interviewer to show that (1) M.G. did not outcry to them, (2) the rapid dilatation could be the result of other factors including constipation and side-effects of medication, and (3) M.G. denied to the forensic interviewer that molestation occurred. We address these in order.

First, to challenge proof of the essential element of penetration of the anus, Ozuna maintains that M.G. did not outcry to the nurse examiner and the forensic interviewer. Even though a child victim need not testify as to penetration, in this case the jury heard M.G.'s testimony and outcry testimony describing penetration. *See Villalon*, 791 S.W.2d at 134 (holding that penetration may be proved by circumstantial evidence). The cold record before us demonstrates that, even with a speech impairment as the medical records indicate, M.G. articulated what Ozuna did to him. M.G.'s testimony of penetration is sufficient evidence of penetration and not too weak to undermine confidence in the jury's determination. *See Zuliani*, 97 S.W.3d at 593–94; *O'Hara*, 837 S.W.2d at 141–42. By its verdict, the jury accepted M.G.'s description even if what was observed and heard meant he could not express himself at the same level of sophistication as an adult. *See O'Hara*, 837 S.W.2d at 141–42.

Both the examining nurse and forensic interviewer described M.G. as hyperactive and their difficulty communicating with him. As Ozuna argues, M.G. did not outcry to them. Even so, either M.G.'s testimony or the outcry testimony is sufficient to sustain the conviction. *Rodriguez*, 819 S.W.2d at 873–74; *Kimberlin*, 877 S.W.2d at 831–32. The absence of outcry to the two examining witnesses does not render the outcry testimony too weak to undermine confidence in the jury's determination. *See Zuliani*, 97 S.W.3d at 593–94.

Second, Ozuna maintains that testimony of other factors that might cause the noted rapid dilatation undermine the conclusion that penetration occurred. The examining nurse testified that other factors including constipation and medication for hyperactivity could contribute to the physical symptom of penetration, rapid dilatation, that she observed on M.G. However, there is no requirement that the victim's testimony be corroborated by medical or physical evidence. *Garcia*, 563 S.W.2d at 928; *Kem-*

*ple,* 725 S.W.2d at 485. Further, M.G.'s grandmother Cantu negated one of the factors by her testimony that M.G. did not suffer from constipation. Testimony adduced from M.G.'s mother negated the other factor because, in 2003, he was not taking medication for hyperactivity. Thus, the record does not contain contrary evidence to prove that the rapid dilatation was not caused by sexual abuse.

Finally, Ozuna maintains that M.G. denied abuse occurred. The forensic interviewer testified that M.G. denied anything happened to him. However, reviewed in the proper context, the record shows that M.G.'s response occurred after the colloquy with the forensic examiner involving "people [eliminating]." The questioned response occurred in the following context:

> Q. People do [eliminate]. Yes, people do [eliminate]. Has anything happened to you?
>
> A. No.

By the time M.G. responded to the above question, the jury had heard from his grandmother Cantu that M.G. did not soil his underwear prior to his outcry but did so after he outcried. Thus, by its verdict the jury could have rationally concluded that M.G. did not deny sexual abuse when asked if anything happened to him but, rather, he denied soiling his underwear.

In his factual sufficiency challenge, Ozuna focuses on the child's credibility. Essentially, Ozuna is asking that we usurp the jury's function. *See Johnson,* 23 S.W.3d at 7. The jury is the exclusive judge of the credibility of the witnesses and the weight to be given their testimony. *Id.* The jury may accept or reject all or part of the evidence. *Id.* The jury may also draw reasonable inferences and make reasonable deductions from the evidence. *Id.* If there is evidence that establishes guilt beyond a reasonable doubt and the jury believes that evidence, we may not

reverse the conviction unless it is manifestly unjust. *Prible,* 175 S.W.3d at 731; *Conner,* 67 S.W.3d at 198. The jury, as the exclusive judge of the credibility of the witnesses and the weight to be given testimony, chose to believe M.G. *See* TEX.CODE CRIM. PROC. ANN. art. 38.04; *Adelman,* 828 S.W.2d at 423; *Butts,* 835 S.W.2d at 151. We defer to that decision. *See Johnson,* 23 S.W.3d at 9. The record does not indicate our intervention is necessary to stop a manifest injustice. *See id.*

Thus, we conclude that the facts in this case that support legal sufficiency of the evidence also render the evidence factually sufficient. Ozuna has pointed to no evidence that would exonerate him of the offense alleged. No evidence exists in the record which negates M.G.'s outcry and testimony of the abuse. Mere speculation will not support Ozuna's argument. *See Conner,* 67 S.W.3d at 198. Accordingly, we conclude that the verdict was not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Prible,* 175 S.W.3d at 731; *Conner,* 67 S.W.3d at 198. Considering all the evidence in a neutral light, we further conclude that the jury was rationally justified in finding guilt beyond a reasonable doubt. *See Zuniga,* 144 S.W.3d at 484–85; *Johnson,* 23 S.W.3d at 9.

Because we find the evidence both legally and factually sufficient to prove aggravated sexual assault of a child, we overrule Ozuna's third point of error.

## IV. CHILD'S COMPETENCY TO TESTIFY

By his first point of error, Ozuna asserts that the trial court abused its discretion by finding M.G. competent to testify. Ozuna argues that the trial court failed to (1) examine the child more thoroughly about and admonish him of the consequences for lying under oath, (2) administer a more

substantial oath before he testified at trial or any oath during the pretrial competency hearing, and (3) disallow the testimony because the child did not know the difference between a truth and a lie and, thus, was not credible. The State responds that the trial court met all statutory requirements to establish competency.

### A. Statutory Requirements as to Child Competency

A child is deemed incompetent to testify if, after being examined by the court, he appears to lack sufficient intellect to relate transactions with respect to which he is interrogated. *See* Tex.R. Evid. 601(a)(2). Thus, rule 601 creates a presumption that every person is competent to testify regardless of age. *Id.; see Reyna v. State,* 797 S.W.2d 189, 191–92 (Tex.App.-Corpus Christi 1990, no pet.) (affirming four-year-old competent to testify about sexual crimes). The rule empowers the trial court to resort to an examination that would tend to disclose a witness's capacity and intelligence in order to ascertain whether that witness is competent to testify. *See Broussard v. State,* 910 S.W.2d 952, 960 (Tex.Crim.App.1995); *Clark v. State,* 659 S.W.2d 53, 55 (Tex.App.-Houston [14th Dist.] 1983, no pet.) (affirming three-year-old's competency to testify).

### B. Child Competency Standard of Review

■■■ Generally, the competency of a witness is an issue for the trial court; thus, the trial court's ruling on whether a child is competent to testify will not be disturbed on appeal absent an abuse of discretion. *See Broussard,* 910 S.W.2d at 960; *Clark v. State,* 558 S.W.2d 887, 890 (Tex.Crim.App.1977); *Reyna,* 797 S.W.2d at 191–92. However, in order to preserve error for review on appeal, a party must timely and specifically object to the trial court and secure an adverse ruling. *See* Tex.R.App. P. 33.1; *Turner v. State,* 805 S.W.2d 423, 431 (Tex.Crim.App.1991).

### C. Child Competency Analysis

■■■ Assuming without deciding that Ozuna preserved error as to his complaints on appeal[6] and further assuming that error occurred below, we conclude that Ozuna has not demonstrated reversible error. *See* Tex.R.App. P. 44.2(b). Eight years old at the time of trial, M.G. presented with a diagnosed speech impairment and hyperactivity. By the time of trial, he was undergoing speech therapy. Throughout M.G.'s testimony, he demonstrated a knowledgeable, controlled, and straightforward demeanor in answering all questions. He answered questions articulately and, because he answered the questions asked, he understood them. He articulated key details of the offense that occurred two years before, including that he was wearing shorts and that Ozuna used the left index finger to perpetrate the offense and slept after the assault. M.G. recalled what he told his grandmother

---

**6.** *See* Tex.R.App. P. 33.1. Two years after the alleged date of the offense, the trial court convened an evidentiary pretrial child competency hearing on Ozuna's motion and denied the motion. Ozuna did not object as to the absence of any oath during the pretrial hearing before M.G. was questioned. Similarly, Ozuna did not object when the trial court announced it would administer and did administer its "modified" oath to M.G. before M.G. testified at trial. Ozuna did not complain that M.G.'s outcry and testimony at trial demonstrated he lacked sufficient intellect so as to render the child not credible and his outcry and testimony unreliable. On appeal, Ozuna dismisses M.G.'s behavior and statements as suspect, and he argues that Cantu's testimony is unreliable. However, because he did not raise any complaint as to Cantu's testimony to the trial court, he did not preserve error. *See* Tex.R.App. P. 33.1.

Cantu regarding the offense. Cantu's testimony mirrored the child's recollection of his outcry.

After reviewing M.G.'s testimony at trial, we have no doubt that he demonstrated his competency to intelligently observe the events in question at the time they happened, recollect them, and clearly articulate and narrate them to the trial court and the jury. Thus, we conclude that Ozuna has not demonstrated prejudice. *See* TEX.R.APP. P. 44.2(b).

We overrule Ozuna's first point of error.

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

By his second point of error, Ozuna asserts that he was denied his constitutional right to counsel because his two trial counsel failed to object to four prejudicial statements. The State responds that trial counsel provided effective assistance of counsel.

### A. Standard of Review of Ineffectiveness Claims

A claim of ineffective assistance of counsel must be firmly supported in the record. *McFarland v. State*, 928 S.W.2d 482, 500 (Tex.Crim.App.1996) (per curiam). When determining the validity of a defendant's claim of ineffective assistance of counsel, we must be highly deferential to trial counsel and avoid the distorting effects of hindsight. *Ingham v. State*, 679 S.W.2d 503, 509 (Tex.Crim.App.1984). We presume counsel's performance was the result of sound trial strategy. *Strickland v. Washington*, 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Stafford v. State*, 813 S.W.2d 503, 506 (Tex.Crim.App.1991). We will not base a finding of ineffectiveness on speculation. *Gamble v. State*, 916 S.W.2d 92, 93 (Tex.App.-Houston [1st Dist.] 1996, no pet.). In the absence of evidence of counsel's reasons for the challenged conduct, an appellate court will assume a strategic motivation and will not conclude that the challenged conduct was deficient unless it was so outrageous no competent attorney would have engaged in it. *Garcia v. State*, 57 S.W.3d 436, 440 (Tex.Crim.App.2001); *Thompson v. State*, 9 S.W.3d 808, 814 (Tex.Crim.App.1999). An appellant claiming ineffective assistance of counsel must show that: (1) counsel's performance fell below an objective standard of reasonableness, based on prevailing professional norms; and (2) there is a reasonable probability, but for counsel's unprofessional errors, that the result of the proceeding would have been different. *McFarland v. State*, 845 S.W.2d 824, 842 (Tex.Crim.App.1992).

### B. Ineffectiveness Analysis

In particular, Ozuna complains of the following four unobjected-to statements. He acknowledges that his two trial counsel did not preserve error as to the objections.

First, in State's exhibit 6, the offending statement is: "The child was asked by the Victim Liaison, Jessica Ochoa from Mission P.D. if he [M.G.] wanted to go back home and live with his mom. He state[d], 'Not [sic], because [Ozuna] is there.' " Ozuna argues that trial counsel should have cross-examined M.G. because of testimony that M.G. was not afraid of anyone. Even so, the jury heard M.G. testify that he did not tell his mother about the assault because he was afraid of her. Further, whether cross-examined or not, M.G. did not have a choice to return home. Cantu testified that, because M.G.'s mother continued living with Ozuna post-arrest, Child Protective Services intervened and both M.G. and his younger sister were placed with Cantu.

■ Second, Ozuna states that Officer Werster impermissibly testified as to the words M.G. used to describe the assault, namely, "Put it in my butt." Ozuna argues that the statement was hearsay. However, in the proper context, the statement occurred when the officer was re-called to testify and after Cantu had already testified as to M.G.'s outcry. Thus, Officer Werster's statement was corroborative of the outcry already before the jury.

■ Third, Ozuna complains that Cantu impermissibly testified that M.G.'s mother was going to give M.G. away and never liked the pregnancy. Ozuna argues that the statements implied M.G. came from an environment that tolerated abuse. However, the jury heard that M.G. and his three siblings were removed from the household because his mother continued to live with the perpetrator. Thus, the jury could make the same complained-of inference from other non-objected to evidence.

■ Fourth, Ozuna complains that, during closing argument, the prosecutor misstated that M.G. verbalized the assault to Downing, the caseworker. On cross-examination, the caseworker acknowledged that M.G. made an outcry to him. By the time the caseworker testified, M.G.'s mother had already testified as to M.G.'s outcry. Viewed in light of the record as a whole, the complained-of argument was a reasonable deduction drawn from the evidence and thus proper. *See Guidry v. State*, 9 S.W.3d 133, 154 (Tex.Crim.App. 1999) (holding that proper jury argument generally must encompass one of four areas including a reasonable deduction drawn from the evidence); *Wilson v. State*, 938 S.W.2d 57, 61 (Tex.Crim.App.1996)

(holding that the argument is considered in light of the record as a whole).

We conclude that Ozuna has not met his burden of showing a reasonable probability that the result of the proceeding would have been different if trial counsel had objected as claimed. *See McFarland*, 845 S.W.2d at 842. Thus, he has not shown he was denied effective assistance of counsel. *Id.* In any event, Ozuna did not develop any record of trial counsel's strategy in not objecting to the offending statements and argument. We decline to speculate. *See Garcia*, 57 S.W.3d at 440. We further conclude that Ozuna did not meet his burden of showing that his trial counsel's performance fell below an objective standard of reasonableness based on prevailing professional norms. *See McFarland*, 845 S.W.2d at 842.

■ Without a record of trial counsel's overall performance and strategic decisions, we cannot determine if counsel's performance was objectively deficient or if it created an unnecessarily disadvantageous result. *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex.Crim.App.1994). Thus, Ozuna has not rebutted the presumption that he was adequately represented.[7] *See id.*

We overrule Ozuna's second point of error.

## VI. CONCLUSION

We have overruled each of Ozuna's three points of error on appeal. We affirm the judgment.

---

**7.** Further, to the extent that Ozuna argues the cumulative effect of these four claims requires reversal, we observe that the concept of cumulative error applies to ineffective assistance claims. *See Chamberlain v. State*, 998 S.W.2d 230, 238 (Tex.Crim.App.1988). However, there is no authority for the proposition that the cumulative effect of non-errors requires reversal. *See id.*