

**NUMBER 13-12-00689-CR**

**COURT OF APPEALS**

**THIRTEENTH DISTRICT OF TEXAS**

**CORPUS CHRISTI – EDINBURG**

---

**JOHN ORNELAS,** **Appellant,**

**v.**

**THE STATE OF TEXAS,** **Appellee.**

---

**On appeal from the 117th District Court
of Nueces County, Texas.**

---

**MEMORANDUM OPINION**

**Before Chief Justice Valdez and Justices Benavides and Longoria
Memorandum Opinion by Chief Justice Valdez**

By two issues, appellant, John Ornelas, challenges his conviction for indecency with a child. *See* TEX. PENAL CODE ANN. § 21.11(a)(1) (West 2011). Appellant contends that (1) the evidence was insufficient to support the jury verdict, and (2) the sentence imposed by the trial court was disproportionate to the seriousness of the

alleged offense, in violation of the Eighth and Fourteenth Amendments to the United States Constitution. *See* U.S. CONST. amend. VIII, XIV. We affirm.

## I. BACKGROUND

Appellant was indicted for two counts of intentionally or knowingly engaging in sexual contact with the victim, J.R., a child younger than seventeen years of age and not his spouse, by touching her genitals with the intent to arouse or gratify his sexual desire. *See* TEX. PENAL CODE ANN. § 21.11(a)(1). At trial, the State presented evidence that, after attending a wedding and visiting two nightclubs, appellant returned to the house of his friend, Randy Cantu. As discussed in more detail herein, Cantu's sister, J.R., then 15-years of age, testified that she awoke in the middle of the night with appellant in her room and that appellant engaged in inappropriate sexual contact with her.

J.R., testified that in the morning of February 19th, 2012, she awoke to find appellant standing in front of her bed and that appellant began asking her questions about whether she had a boyfriend. She stated that appellant left the room and came back several times because he heard noises. She then stated that appellant lay down in bed beside her and that he put his hand "over her vagina" and then put her hand in his shorts. She testified that appellant had an erection. The following exchange then occurred between the prosecutor and J.R.:

[Prosecutor]:     Did [appellant] ever put his hand down your shorts?

J.R.:             Yes

[Prosecutor:]     And when he put his hands down your shorts, did he put his hands over or under your underwear?

J.R.:             Under.

[Prosecutor]:     And did he touch your vagina?

2

J.R.:                    Yes.

The State also called Officer Darrel Anderson, who testified that he arrested appellant; J.R.'s mother, who testified that J.R. outcried to her; and Detective Jason Smith, who testified that he interviewed J.R. and that she identified appellant as the person that sexually assaulted her.  The State called Randall Cantu, J.R.'s brother, who testified that he and Appellant went to a wedding and two clubs on the eve of the alleged assault and then returned to his home where J.R. also lives, and that in the morning of February 19, around 3:30 a.m., he saw appellant exit his sister's room.  He also testified that, in the afternoon of February 19th, after he learned about the alleged assault from his mother, he drove to appellant's extended-stay hotel, picked him up, and had a brief altercation with him.  On cross-examination, Cantu stated that he did not purchase or use cocaine on the evening before or the morning of the alleged assault and that there had been some past animosity between he and appellant and he and appellant's brother, but that he had no reason to seek retaliation against appellant.  The State also called J.C., J.R.'s eight-year-old nephew, who testified that he was sleeping in bed with J.R. on the night of the alleged sexual assault and that appellant came in the room and lied down with J.R. and was talking to her while she was crying.

Appellant called his friend Melanie Gonzalez who testified that appellant called her around 4:30 or 4:35 on the morning of the alleged assault and asked her to pick him up from the house that the alleged incident occurred; she testified that she did so and left him at his extended-stay motel.  Next another friend of appellant, Eva Gonzalez, testified that appellant had been at her daughter's wedding the night before the alleged incident.  She also stated that appellant appeared at her house the morning of the alleged incident and stated that he had been in a fight with J.R.'s brother, Randy Cantu.

3

Next Gracie Bocelli, appellant's mother, testified that on the morning of the alleged incident, appellant called the police and claimed that J.R.'s brother, Randy Cantu, sexually assaulted him by kicking him in the groin. Appellant then took the stand and testified that he had been at a wedding and two clubs with Randy Cantu and two other men the night before the alleged assault. He testified that around 4:00 a.m., Cantu and another man purchased cocaine. He testified that they returned to Cantu's home at around 4:15 a.m., and he called Melanie Gonzalez to pick him up. He stated that he left the house around 4:45 a.m. and that he never entered J.R.'s room. He testified that the next morning Cantu picked him up and took him back to his house where J.R.'s mother confronted him concerning the alleged sexual assault and where he and Cantu had an altercation.

The jury found appellant guilty of indecency with a child and sentenced him to five years in prison on each count. The trial court ordered the sentences to run concurrently. This appeal ensued.

## II.     LEGAL SUFFICIENCY

### A. Standard of Review

"When reviewing a case for legal sufficiency, we view all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[1] *Winfrey v. State*, 323 S.W.3d 875, 878–79 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*,

---

[1] Appellant contends that the evidence against him is factually insufficient. However, the court of criminal appeals has held that there is "no meaningful distinction between the *Jackson v. Virginia* legal sufficiency standard and the *Clewis* factual-sufficiency standard" and that the *Jackson* standard "is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt." *Brooks v. State*, 323 S.W.3d 893, 902–03, 912 (Tex. Crim. App. 2010) (plurality op.). Accordingly, we review appellant's claim of evidentiary sufficiency under "a rigorous and proper application" of the *Jackson* standard of review. *See id.* at 906–07, 912.

4

443 U.S. 307, 319 (1979)). Accordingly, "we 'determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict.'" *Id.* at 879 (quoting *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) (citing *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007)). "It has been said quite appropriately, that '[t]he appellate scales are supposed to be weighted in favor of upholding a trial court's judgment of conviction, and this weighting includes, for example, the highly deferential standard of review for legal-sufficiency claims.'" *Id.* (quoting *Haynes v. State*, 273 S.W.3d 183, 195 (Tex. Crim. App. 2008) (Keller J., dissenting) (citing *Jackson*, 443 U.S. at 319)). "We must therefore determine whether the evidence presented to the jury, viewed in the light most favorable to the verdict, proves beyond a reasonable doubt that appellant" committed the crime for which the jury found him guilty. *Id.* "It is the obligation and responsibility of appellate courts 'to ensure that the evidence presented actually supports a conclusion that the defendant committed the crime that was charged.'" *Id.* at 882 (quoting *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007)).

We measure the sufficiency of the evidence by the elements of the offense as defined by the hypothetically correct jury charge. *Coleman v. State*, 131 S.W.3d 303, 314 (Tex. App.—Corpus Christi 2004, pet. ref'd) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). The hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of

liability, and adequately describes the particular offense for which the defendant was tried." *Malik*, 953 S.W.2d at 240.

Additionally, in our analysis of the verdict, we recognize that the jury is the exclusive judge of the credibility of the witnesses and the weight to be given their testimony. *Ozuna v. State*, 199 S.W.3d 601, 610 (Tex. App.—Corpus Christi 2006, no pet.). The jury may accept or reject all or part of the evidence. *Id.* The jury may also draw reasonable inferences and make reasonable deductions from the evidence. *Id.*

### B. Applicable Law

A person commits indecency with a child if that person engages in sexual contact with the child or causes the child to engage in sexual contact. TEX. PENAL CODE ANN. § 21.11(a)(1) (West 2011). "Sexual contact" means any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child if committed with the intent to arouse or gratify the sexual desire of any person. *See id.* § 21.11(c). The indictment specifically charged appellant with touching the victim's genitals with the intent to gratify his own sexual desire.

"A complainant's testimony alone is sufficient to support a conviction for indecency with a child**.**" *Connell v. State*, 233 S.W.3d 460, 466 (Tex. App.—Fort Worth 2007, no pet.); *Perez v. State*, 113 S.W.3d 819, 838 (Tex. App.—Austin 2003, pet. ref'd); *see* TEX. CODE CRIM. PROC. ANN. art. 38.07 (West Supp. 2011); *Tear v. State*, 74 S.W.3d 555, 560 (Tex. App.—Dallas 2002, pet. ref'd). The specific intent required for the offense of indecency with a child may be inferred from a defendant's conduct as well as the surrounding circumstances. *Bazanes v. State*, 310 S.W.3d 32, 40 (Tex. App.—Fort Worth 2010, pet ref'd) (citing *McKenzie v. State*, 617 S.W.2d 211, 216 (Tex. Crim.

App. 1981)).  The victim's testimony need not be corroborated by medical or physical evidence.  *Gonzalez Soto v. State*, 267 S.W.3d 327, 332 (Tex. App.—Corpus Christi 2008, no pet.).

### C. Discussion

Appellant argues that the evidence was legally insufficient to support the jury's verdict.  Appellant concedes that the victim in this case testified that the alleged abuse occurred.  However, he claims that the facts that "the only witness to this alleged sexual assault was the victim" and that the testimony suggested that there was past animosity between appellant and the victim's brother "should have raised reasonable doubt in the jury's mind that appellant may not have committed" the offense.  Under Texas law, however, a victim's testimony alone is sufficient to support a guilty verdict in a child sex abuse case, and in this case, it is undisputed and clear from the record that the victim testified that the alleged abuse occurred.  *See* TEX. CODE CRIM. PROC. ANN. art. 38.07 (West Supp. 2011); *Connell*, 233 S.W.3d at 466; *Perez*, 113 S.W.3d at 838; *Tear*, 74 S.W.3d at 560.  J.R. specifically stated that appellant put his hand inside her shorts and over her vagina and answered "yes" when the prosecutor asked her if appellant touched her vagina.  She further testified that appellant put her hand in his shorts and that he had an erection. This testimony is clearly sufficient to support the jury's determination that appellant touched J.R's genitals with the intent to arouse his sexual desire, as alleged in the indictment.  *See* TEX. CODE CRIM. PROC. ANN. art. 38.07 (West Supp. 2011); *Connell*, 233 S.W.3d at 466; *Perez*, 113 S.W.3d at 838; *Tear*, 74 S.W.3d at 560.

The appellant also asserts that evidence of past animosity between appellant and the victim's brother should have raised reasonable doubt, presumably as an

argument that the witnesses may have had a motive to falsely accuse appellant of this offense. However, the jury was entitled to disbelieve and determine how much weight to be given to any testimony suggesting that the victim or any other witness had a motivation to make false accusations. *See Ozuna,* 199 S.W.3d at 610. The jury, as the ultimate finder of fact, was entitled to determine the witness' credibility, and we cannot replace its judgment with our own. *See id.* We overrule appellant's first issue.

### III.    CONSTITUTIONALITY OF THE SENTENCE

In his second issue, appellant contends that the sentence imposed by the trial court was disproportionate to the seriousness of the alleged offense, in violation of the Eighth and Fourteenth Amendments to the United States Constitution. *See* U.S. CONST. amend. VIII, XIV. Specifically, appellant argues that the sentence is cruel, unusual, and grossly disproportionate to the severity of his crime.

The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fine imposed, nor cruel and unusual punishment inflicted." *See* U.S. CONST. amend. VIII. The Eighth Amendment applies to punishments imposed by state courts through the Due Process Clause of the Fourteenth Amendment. *See* U.S. CONST. amend. XIV. Yet, it is possible for this right, and every constitutional or statutory right, to be waived by a "failure to object." *Smith v. State*, 721 S.W.2d 844, 855 (Tex. Crim. App. 1986). Generally, to preserve error for appellate review, a party must present a timely objection to the trial court, state the specific grounds for the objection, and obtain a ruling. TEX. R. APP. P. 33.1(a). The failure to specifically object to an alleged disproportionate or cruel and unusual sentence in the trial court or in a post-trial motion waives any error for our review. *Noland v. State*, 264 S.W.3d 144, 151 (Tex. App.—

8

Houston [1st Dist.] 2007, pet. ref'd) ("[I]n order to preserve for appellate review a complaint that a sentence is grossly disproportionate, constituting cruel and unusual punishment, a defendant must present to the trial court a timely request, objection, or motion stating the specific grounds for the ruling desired."); *Trevino v. State*, 174 S.W.3d 925, 928 (Tex. App.—Corpus Christi 2005, pet. ref'd) (providing that "by failing to object to the trial court's sentence, [the appellant] forfeited his complaint" that the sentence was cruel and unusual); *see also Daliet v. State*, No. 13-11-00611-CR, 2013 Tex. App. LEXIS 3871, at *5 (Tex. App.—Corpus Christi Mar. 28, 2013, pet. ref'd) (mem. op., not designated for publication) (holding in regards to an appeal on proportionality of sentencing that, "appellant acknowledges that no objection was made to the sentence in the trial court, but invites us to review the sentence under our inherent power. The error being unpreserved, we decline the invitation.").

Appellant complains for the first time on appeal that his eighth amendment rights have been violated because the sentence imposed by the trial court is cruel, unusual, and grossly disproportionate to the offense committed. In his appellate brief, appellant claims that he "raised this specific issue to ensure there was no waiver of an anticipatory claim in Federal Court." The record reveals, however, that appellant did not object to the sentence at the punishment hearing or in any post-trial motion. Moreover, appellant's sentence was within the punishment range of a second-degree felony.[2] A punishment falling within the limits prescribed by a valid statute is not per se excessive, cruel, or unusual. *Trevino*, 174 S.W.3d at 928. Therefore, because appellant failed to object to the proportionality of a sentence that was not unconstitutional per se,

---

[2] A second-degree felony has a punishment range of two to twenty years' confinement. *See* TEX. PENAL CODE ANN. § 12.33(a) (West Supp. 2011).

9

appellant's argument is waived.[3]  *See* TEX. R. APP. P. 33.1(a); *Noland*, 264 S.W.3d at

151; *Trevino*, 174 S.W.3d at 928; *see also Daliet*, 2013 Tex. App. LEXIS 3871, at *5.

We overrule appellant's second issue.

## IV.  CONCLUSION

We affirm.

_____
ROGELIO VALDEZ
Chief Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
25th day of July, 2013.

---

[3] Appellant also claims that "it was within a court's power to review a sentence imposed by judge or jury and to determine whether such sentence passed [c]onstitutional muster, even if no objections were made during trial." We note that this argument seems to suggest that a trial court has discretion to make a ruling in this situation, not that a defendant need not make a proper objection at trial to preserve argument *for appeal.* Additionally, to support this claim, appellant cites two cases in which Texas courts considered a court's power to adjudicate challenges to the constitutionality of legislative acts and not whether disproportionate sentencing arguments were preserved for appeal. *See Lovejoy v. Lillie*, 569 S.W.2d 501, 503 (Tex. Civ. App.—Tyler 1978, writ ref'd n.r.e); *Houston Chronicle Publ'g Co. v. City of Houston*, 531 S.W.2d 177, 185 (Tex. Civ. App.—Houston [14th Dist.] 1975, writ ref'd). Appellant does not explain, and we fail to see, the relevance of these citations to the present case. Instead, we rely on the case law cited in the body of this opinion in determining that, because he did not make an objection, appellant waived his argument on appeal that the sentence imposed is disproportionate. *See Noland*, 264 S.W.3d at 151; *Trevino*, 174 S.W.3d at 928; *see also Daliet*, 2013 Tex. App. LEXIS 3871, at *5.