

**NUMBER 13-09-00623-CR**

**COURT OF APPEALS**

**THIRTEENTH DISTRICT OF TEXAS**

**CORPUS CHRISTI - EDINBURG**

JUAN REYES RIVERA,                                                          Appellant,

v.

THE STATE OF TEXAS,                                                          Appellee.

**On appeal from the 94th District Court
of Nueces County, Texas.**

**MEMORANDUM OPINION**

**Before Chief Justice Valdez and Justices Rodriguez and Perkes
Memorandum Opinion by Chief Justice Valdez**

Appellant, Juan Reyes Rivera, was charged by indictment with the offense of continuous sexual abuse of a child, a first-degree felony. *See* TEX. PENAL CODE ANN. § 21.02(b), (h) (Vernon Supp. 2010). A jury convicted Rivera of the charged offense and sentenced him to life imprisonment in the Institutional Division of the Texas Department of Criminal Justice. By one issue, Rivera asserts that he was provided ineffective

assistance of counsel because his trial counsel allegedly failed to object to the admission of hearsay testimony from several witnesses, the admission of testimony concerning the child victim's truthfulness, and the prosecutor's closing argument. We affirm.

## I.    BACKGROUND

Rivera was charged with continuously sexually abusing J.E., an eight-year-old child.[1]  *See id.* § 21.02(b).[2]  The abuse was discovered when one of J.E.'s sisters read a diary that J.E. kept.  In her diary, J.E. noted that "My grandpa [Rivera] tries to rape me[,] and I don't feel comfortable."  When J.E.'s sister discovered this note, she immediately took it to J.E.'s mother, C.L.  C.L. was surprised by the allegations, but she asked J.E. about the incidents.  J.E. told C.L. that Rivera had touched her more than one hundred times and that he had repeatedly exposed his penis to her.  J.E. initially told C.L. that Rivera had only touched her with his hands; however, she later noted that Rivera also touched her with his penis and that he had penetrated her vagina with his finger.  After hearing this story, C.L. took J.E. to Driscoll Children's Hospital ("Driscoll") in Corpus Christi, Texas, so that she could undergo an examination.

---

[1] To protect the identities of the children involved, we refer to them and their mother by their initials. *See* TEX. R. APP. P. 9.8.

[2] Section 21.02(b) provides that a person commits the offense of continuous sexual abuse of a young child if:

(1)  during a period that is 30 or more days in duration, the person commits two or more acts of sexual abuse, regardless of whether the acts of sexual abuse are committed against one or more victims; and

(2)  at the time of the commission of each of the acts of sexual abuse, the actor is 17 years of age or older and the victim is a child younger than 14 years of age.

TEX. PENAL CODE ANN. § 21.02(b) (Vernon Supp. 2010).

Nurse Sandra Pardo, a sexual abuse nurse examiner at Driscoll, conducted the examination of J.E. Nurse Pardo did not find any evidence of trauma to J.E.'s sexual organs; however, she noted that it is often the case that trauma is not revealed in the examination because the body heals very quickly. Nurse Pardo also took a history from J.E., whereby J.E. stated that:

> Grandpa, Juan Rivera, tried to do some nasty stuff with me. He touched it (patient [J.E.] indicates female sexual organ by pointing.) His hands were over my pants. I told him to stop. He stopped. He always does it when Grandma [Blanca Rivera] is gone or asleep. My brothers and sisters go out to play and he grabs me.

Nurse Pardo did not recall J.E. telling her that Rivera penetrated her sexual organ or her anus with his penis or that he ejaculated.

Tanya Flores, an investigator with the Corpus Christi Police Department, testified that J.E. "disclose[d] issues pertaining to sexual abuse." Investigator Flores recalled viewing J.E.'s diary, where J.E. described that Rivera had raped her; Investigator Flores noted that J.E. first told her brother, S.E., about the abuse before she told C.L. J.E. told Investigator Flores that the abuse took place for two years, from when J.E. was six years old until she was eight years old. Investigator Flores also discovered that the alleged sexual abuse transpired at Rivera's house in Corpus Christi and at a resort in New Braunfels.

Ricardo Jimenez, the program director and lead forensic interviewer at the Children's Advocacy Center in Corpus Christi, testified that he interviewed J.E. about the alleged incidents of sexual abuse for eighteen minutes, a length that Rivera suggested on cross-examination was insufficient to obtain the truth.[3] Jimenez noted

---

[3] A DVD of Jimenez's interview of J.E. was admitted into evidence. Initially, on appeal, the record did not contain a copy of the DVD despite a request made by Rivera's trial counsel to include the DVD in

that J.E. seemed to add details each time she was asked about the abuse. He characterized this as "incremental disclosure," wherein "sometimes kids think they're in trouble, so they'll kind of give a little bit of information. If that's okay, then more comes out. . . . [I]f we have an incident of abuse that's occurred over a long period of time, again, more comes out with time." J.E. told Jimenez that Rivera would tell her that she would owe him "big" or "big time" each time she asked for something and Rivera would buy it. Towards the end of the interview, Jimenez left the room to discuss the case with others. He later returned to clear up discrepancies in J.E.'s stories, especially between her statement to him and the statements made at Driscoll.[4] J.E. told Jimenez that Rivera had penetrated her vagina "30 plus times" and that he had touched her vagina more than 100 times.

S.E. testified that J.E. is one of his younger sisters and that she was "a good kid" who did not get in a lot of trouble. S.E. recalled that Rivera treated J.E. differently than the other grandchildren. In particular, S.E. stated that "he [Rivera] would give her all this money and like we wouldn't get no [sic] money and like we would have to use our own money like if we wanted to buy snacks and then he gave her money so she didn't use her money." S.E. thought that Rivera treated J.E. as his favorite. S.E. remembered that J.E. told him that Rivera was touching her, but he "didn't really think nothing [sic] of it." S.E. also remembered one incident where he and his sister, M.E., were locked out of Rivera's house while J.E. and Rivera were the only ones inside. On cross-examination, Rivera's trial counsel questioned S.E. regarding the locked-door incident.

the appellate record. We requested that the trial court provide us with the DVD, which it did. Accordingly, we have reviewed the DVD in analyzing the record in this appeal.

[4] One such discrepancy pertained to J.E.'s disclosure to Jimenez that Rivera had had sex with her in the shower, a story that she did not share with Nurse Pardo.

4

S.E. recalled hearing the door lock and trying to open the door, but it would not open. In addition, S.E. denied ever being touched inappropriately by Rivera.

Rosemary Goltz, a licensed professional counseling intern, stated that she spoke with J.E. about the incidents and that J.E. appeared to be tired and regressing or, in other words, acting like a baby. Goltz attributed J.E.'s odd behavior to post-traumatic stress disorder. Goltz remembered that J.E. had difficulty concentrating, and it appeared that J.E. wished to block out the incidents and no longer talk about them. J.E. disclosed the alleged sexual abuse to Goltz, and at the conclusion of the interview, Goltz assisted J.E. in filling out a questionnaire. In the questionnaire, J.E. indicated that Rivera had: (1) been naked around her; (2) masturbated in front of her; (3) not engaged in intercourse with her; (4) had oral or anal sex with her; (5) did not force her into prostitution; and (6) forced her to watch pornographic movies.

On cross-examination of each of the aforementioned witnesses, Rivera's trial counsel inquired about J.E.'s stories about the abuse, insinuating that J.E. may have not been truthful given the fact that her story changed repeatedly. Rivera's trial counsel repeatedly asked the witnesses about the apparent inconsistencies in J.E.'s retelling of the abuse, thus placing J.E.'s credibility at issue. It was only on re-direct examination that the State asked questions of the witnesses regarding J.E.'s truthfulness in order to rebut the impression that Rivera's trial counsel left with the jury—that J.E. was not truthful. In addition, the State called Goltz and Paula Rosenstein, a therapist at Family Counseling Service, to testify that J.E. was suffering from post-traumatic stress disorder

and that was likely the reason that J.E.'s stories about the incidents changed or why J.E. seemed to add more details with each retelling of the stories.[5]

J.E. testified that, on March 22, 2008, she wrote in her diary that Rivera had raped her and that she did not feel comfortable about it. J.E. recalled that Rivera touched her vagina with his hands, both over her clothes and underneath her clothes. J.E. stated that the sexual abuse typically occurred in the guest room of Rivera's house, which she considered to be her room. She recalled one incident where Rivera allegedly got on top of her while she was wearing his white t-shirt. In this instance, J.E. was not wearing any underwear and Rivera purportedly rubbed J.E.'s vagina with his penis. She remembered that something white would often come out of Rivera's penis. J.E. denied that Rivera touched her anywhere else but her vagina. J.E. also testified that Rivera would make her watch pornographic movies and that he would masturbate in front of her while watching the movies. Further, J.E. noted that Rivera gave her candy, gifts, and money frequently despite allegedly not giving the other grandchildren anything. The State characterized these actions as "grooming" J.E. or, in other words, bribing her to keep quiet about the sexual abuse. Later in her testimony, J.E. admitted that she had not told Nurse Pardo or Jimenez everything that had transpired, and she denied ever telling Jimenez that Rivera had ever put his penis inside her vagina.

---

[5] Rosenstein described J.E.'s purported post-traumatic stress disorder as follows:

It's as if she's kind of pocketed off different things that happened to her and as she—as she can or as parts of her kind of open up and—and she relaxes these things come to her mind. It's kind of like she segmented things off so that she can cope and she can handle it. If she remembered everything at once[,] she would probably become psychotic.

6

Rivera and his wife, Blanca Rivera, testified on Rivera's behalf. Blanca testified that she did not believe that Rivera sexually abused J.E. According to Blanca, J.E. told her that "nobody touches me." Blanca explained that:

> She's—she's a good little girl, but she lies. She likes to make up stories, likes to lie a lot, to get her way. If she don't [sic] get her way, she gets into lying, to get the other kids in trouble. That's how she is. She's a sweetheart, and I love her very much, but she lies to get her way all the time. She lies a lot. Constantly lying.

Blanca also testified that virtually everyone else who alleged that Rivera engaged in wrongdoing lies, especially C.L. Blanca denied seeing Rivera doing "stuff for just [J.E.] without also doing stuff for the other kids." She later recognized a letter sent by Rivera to C.L., which included $12 for just J.E., but Blanca explained that Rivera really meant for the money to go to J.E. and one of her brothers. Blanca testified that there are not any pornographic movies or magazines at the Rivera house. Blanca acknowledged that she had not spoken to J.E. since J.E. made her outcry statements, more than two years later. Blanca further testified that Rivera did not pay special attention to J.E.

Rivera testified on his own behalf and denied the allegations made in the indictment and the allegations made by J.E. Rivera denied treating J.E. any differently than his other grandchildren. Rivera explained that the $12 he sent J.E. was to be used to buy lunch at school. Rivera testified that he and C.L. had an agreement for Rivera to claim J.E. as a dependent on his income tax return for 2006 and 2007. He also testified that Blanca was in charge of the money, and he was only allowed to buy the grandchildren snacks at the store. Rivera agreed with Blanca that his grandchildren were "a bunch of little liars." Rivera believed that the allegations were made against him

7

because he had previously stated that he was no longer going to baby-sit the children and he was no longer going to assist C.L. financially.

## II.    STANDARD OF REVIEW

To establish ineffective assistance of counsel, Rivera must show:  (1) his attorney's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for his attorney's errors, the result of the proceeding would have been different.  *See Strickland v. Washington*, 466 U.S. 668, 684 (1984); *Dewberry v. State*, 4 S.W.3d 735, 757 (Tex. Crim. App. 1999) (holding that appellant must show a reasonable probability that, but for counsel's errors, the fact-finder would have had a reasonable doubt as to appellant's guilt); *Jaynes v. State*, 216 S.W.3d 839, 851 (Tex. App.–Corpus Christi 2006, no pet.).  Whether this test has been met is to be judged on appeal by the totality of representation, not by any isolated acts or omissions.  *Jaynes*, 216 S.W.3d at 851.  Rivera has the burden of proving ineffective assistance of counsel by a preponderance of the evidence.  *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999) (citing *Cannon v. State*, 668 S.W.2d 401, 403 (Tex. Crim. App. 1984)).

Our review of counsel's representation is highly deferential, and we will find ineffective assistance only if Rivera overcomes the strong presumption that his counsel's conduct fell within the range of reasonable professional assistance.  *See Strickland*, 466 U.S. at 689; *Jaynes*, 216 S.W.3d at 851.  The right to "reasonably effective assistance of counsel" does not guarantee errorless counsel or counsel whose competency is judged by perfect hindsight.  *Saylor v. State*, 660 S.W.2d 822, 824 (Tex. Crim. App. 1983).  Moreover, the acts or omissions that form the basis of Rivera's claims of ineffective assistance must be supported by the record.  *Thompson*, 9 S.W.3d

8

at 814; *Jaynes*, 216 S.W.3d at 851.  A silent record which provides no explanation for counsel's actions usually will not overcome the strong presumption of reasonable assistance.  *Thompson*, 9 S.W.3d at 813-14.  To warrant reversal without affording counsel an opportunity to explain his actions, "the challenged conduct must be 'so outrageous that no competent attorney would have engaged in it.'"  *Roberts v. State*, 220 S.W.3d 521, 533 (Tex. Crim. App. 2007) (quoting *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005)).

### III.    THE RECORD

At the outset of our analysis of Rivera's appellate complaints, we note that Rivera did not assert that his trial counsel provided ineffective assistance of counsel in his motion for new trial.  Moreover, the record does not reflect that a hearing was conducted on Rivera's motion for new trial; instead, the motion was overruled by operation of law.  *See* TEX. R. APP. P. 21.8(a), (c); *see also State v. Gutierrez*, 143 S.W.3d 829, 831 (Tex. App.–Corpus Christi 2004, no pet.).  Thus, Rivera's trial counsel has not been afforded an opportunity to explain his trial strategy.  Given that a silent record ordinarily will not overcome the strong presumption of reasonable assistance, we will review Rivera's appellate complaints to determine whether trial counsel's alleged inactions were "so outrageous that no competent attorney would have engaged in [them]."  *See Roberts*, 220 S.W.3d at 533; *Goodspeed*, 187 S.W.3d at 392; *Thompson*, 9 S.W.3d at 813-14.

### IV.    HEARSAY

In his first sub-issue, Rivera contends that his trial counsel was ineffective for failing to object to numerous hearsay statements made by several outcry witnesses.

9

Rivera argues that the admission of these statements violated article 38.072 of the code of criminal procedure, *see* TEX. CODE CRIM. PROC. ANN. art. 38.072 (Vernon Supp. 2010),[6] and that, but for his trial counsel's failure to object to these statements, the

---

[6] Article 38.072 of the code of criminal procedure provides as follows, in pertinent part:

Sec. 1.  This article applies to a proceeding in the prosecution of an offense under any of the following provisions of the Penal Code, if committed against a child 14 years of age or younger or a person with a disability:

    (1)  Chapter 21 (Sexual Offenses)

    . . . .

Sec. 2.

(a)  This article applies only to statements that:

    (1)  describe:

        (A)  the alleged offense;

    . . . .

    (2)  were made by the child or person with a disability against whom the charged offense or extraneous crime, wrong, or act was allegedly committed; and

    (3)  were made to the first person, 18 years of age or older, other than the defendant to whom the child or person with a disability made a statement about the offense or extraneous crime, wrong, or act.

(b)  A statement that meets the requirements of Subsection (a) is not inadmissible because of the hearsay rule if:

    (1)  On or before the 14th day before the date the proceeding begins, the party intending to offer the statement:

        (A)  notifies the adverse party of its intention to do so;

        (B)  provides the adverse party with the name of the witness through whom it intends to offer the statement; and

        (C)  provides the adverse party with a written summary of the statement;

    (2)  the trial court finds, in a hearing conducted outside the presence of the jury, that the statement is reliable based on the time, content, and circumstances of the statement; and

    (3)  the child or person with a disability testifies or is available to testify at the proceeding in court or in any other manner provided by law. . . .

result of the trial would have been different. The State counters by arguing that "the outcries in question are inconsistent, and that Rivera's attorney used the inconsistencies to his advantage." The State also argues that much of the outcry testimony about which Rivera complains would be admissible under various exceptions to the hearsay rule.

On appeal, Rivera directs us to the testimony of Lopez, Jimenez, Nurse Pardo, Goltz, and S.E. He argues that their testimony constituted inadmissible hearsay because their testimony "merely repeat[ed] the same event as related to them by the victim" and, thus, violated article 38.072. *See id.*; *see also Broderick v. State*, 35 S.W.3d 67, 73 (Tex. App.–Texarkana 2000, pet. ref'd) (noting that the proper outcry witness to a single event is the first adult person other than the defendant to whom the victim made a statement describing the incident).

After reviewing the record, we hold that Rivera's reliance on *Broderick* is misplaced, and we disagree that the witnesses "merely repeat[ed] the same event as related to them by the victim." *See Broderick*, 35 S.W.3d at 73. First, with respect to *Broderick*, we note that the Texarkana Court of Appeals stated the following:

> Because of the way in which the statute [article 38.072] is written, an outcry witness is not person-specific, but event-specific. Before more than one outcry witness may testify, however, the outcry must be about a different event, and not simply a repetition of the same event as related by the victim to different individuals. From a careful reading of the outcry witness statute, we conclude that there may be two proper outcry witnesses if they each testify about different events, but there may be only one outcry witness to the victim's statement about a single event.

*Id.* Therefore, under article 38.072, the State may call upon multiple outcry witnesses to testify so long as the witnesses testify about different events. In the instant case, J.E.

---

TEX. CODE CRIM. PROC. ANN. art. 38.072 (Vernon Supp. 2010).

alleged that Rivera sexually assaulted her more than 100 times during a two-year period—from when she was six years old until she was eight years old. The State's outcry witnesses testified to J.E.'s recounting of several events, including times when Rivera allegedly: (1) stuck his penis inside J.E.'s vagina; (2) touched J.E.'s vagina with his fingers; (3) rubbed his penis on J.E.'s vagina; and (4) forced J.E. to watch pornographic videos while masturbating. Based on the allegations made by J.E., Rivera engaged in numerous instances of sexual assault or, in other words, multiple events. Therefore, we cannot say that the outcry witnesses' testimony repeated information about the same event and was, therefore, inadmissible under article 38.072. *See id.*; *see also* TEX. CODE CRIM. PROC. ANN. art. 38.072.

Moreover, several witnesses testified that J.E.'s story regarding the ongoing sexual abuse changed slightly each time she told it. In particular, Jimenez stated that J.E. appeared to engage in what is known as "incremental disclosure," wherein the child victim discloses additional information about ongoing incidences of abuse each time they speak to someone with whom they are comfortable. Further, Rosenstein and Goltz described J.E. as having post-traumatic stress disorder, which affected her ability to convey detailed descriptions of the two years of alleged sexual abuse. The inconsistencies in J.E.'s outcry statements and the fact that the sexual abuse was repeated and ongoing for two years do not support Rivera's contention that the complained-of testimony was repetitive and, thus, inadmissible.

Based on our review of the record, it appears that an objection to the complained-of testimony would not have been successful. Instead, on cross-examination, trial counsel questioned most of the witnesses regarding the changes in

J.E.'s story about the two-year period of sexual abuse. Such questioning was likely done to undermine J.E.'s credibility before the jury and, therefore, appears to be grounded in legitimate trial strategy. *See Garza v. State*, 213 S.W.3d 338, 348 (Tex. Crim. App. 2007) (stating that if counsel's reasons for his conduct do not appear in the record and there is "at least the possibility" that the conduct could have been grounded in legitimate trial strategy, we will defer to counsel's decisions and deny relief on an ineffective-assistance claim on direct appeal). Furthermore, even assuming that trial counsel's failure to object to hearsay statements was not grounded in reasonable trial strategy, Rivera has not clearly demonstrated that there is a reasonable probability that, but for his trial counsel's unprofessional errors, the result of the proceeding would have been different, especially considering that J.E. testified about the ongoing sexual abuse, and a child victim's testimony alone is sufficient to sustain a conviction for sexual assault. *See Strickland*, 466 U.S. at 684; *see also* TEX. CODE CRIM. PROC. ANN. art. 38.07 (Vernon 2005) (providing that the testimony of the sexual abuse victim alone is sufficient to support a conviction based on that abuse); *Ozuna v. State*, 199 S.W.3d 601, 606 (Tex. App.–Corpus Christi 2006, no pet.) (same). We, therefore, overrule Rivera's first sub-issue.

## V. THE CHILD VICTIM'S TRUTHFULNESS

In his second sub-issue, Rivera argues that his trial counsel was ineffective for failing to object to opinion testimony regarding the credibility of J.E. In particular, Rivera complains about the opinion testimony of Investigator Flores, S.E., and Goltz regarding J.E.'s truthfulness and states that this testimony constituted impermissible bolstering. The State asserts that Rivera's trial counsel likely did not object to this testimony because the witnesses were "coming across as biased"; thus, an objection would not

13

have been beneficial. The State also points out that Rivera's trial counsel elicited testimony from Rivera's wife that the child victim was a "good little girl" who had a tendency to lie and make up stories.

## A. Applicable Law

"Bolstering occurs when one party introduces evidence for the purpose of adding credence or weight to earlier unimpeached evidence offered by that same party." *Rousseau v. State*, 855 S.W.2d 666, 681 (Tex. Crim. App. 1993) (citing *Guerra v. State*, 771 S.W.2d 453, 474 (Tex. Crim. App. 1988). The court of criminal appeals has also stated that bolstering evidence is:

> any evidence the *sole* purpose of which is to convince the fact[-]finder that a particular witness or source of evidence is worthy of credit, without substantively contributing "to make the existence of a fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." Accordingly, evidence that corroborates another witness' story or enhances inferences to be drawn from another source of evidence, in the sense that it has an incrementally *further* tendency to establish a fact of consequence, should not be considered "bolstering."

*Cohn v. State*, 849 S.W.2d 817, 819-20 (Tex. Crim. App. 1993) (emphasis in original) (citation omitted).

"Regardless of whether a witness is impeached, additional evidence to the same effect is not 'bolstering' if . . . it makes any substantive contribution or incrementally tends to further a fact of consequence." *Briones v. State*, 12 S.W.3d 126, 129 (Tex. App.–Fort Worth 1999, no pet.). It is not improper bolstering if the testimony elicited is used to rebut prior impeachments by opposing counsel. *See Skeen v. State*, 96 S.W.2d 567, 578 (Tex. App.–Texarkana 2002, pet. ref'd) ("Testimony elicited to rebut prior impeachments by opposing counsel is not considered improper bolstering.") (citing

*Anderson v. State*, 717 S.W.2d 622, 629 (Tex. Crim. App. 1986)); *see also Sepulveda v. State*, No. 13-07-627-CR, 2009 Tex. App. LEXIS 981, at *17 (Tex. App.–Corpus Christi Feb. 12, 2009, pet. ref'd) (mem. op., not designated for publication).

### B. Discussion

In this sub-issue, Rivera complains about statements made by Investigator Flores, S.E., and Goltz regarding J.E.'s truthfulness. In particular, Rivera asserts that "[i]t is generally improper for a witness to offer a direct opinion as to the truthfulness of another witness and such opinion is therefore inadmissible." *Blackwell v. State*, 193 S.W.3d 1, 21 (Tex. App.–Houston [1st Dist.] 2006, pet. ref'd). According to Rivera, testimony from Investigator Flores, S.E., and Goltz amounted to inadmissible bolstering of J.E.'s credibility.

After reviewing the complained-of testimony, we are unable to find any instance of inadmissible bolstering. With respect to Investigator Flores, Rivera directs us to testimony on re-direct examination whereby Investigator Flores denied that J.E. made up her stories because she hated Rivera and stated that she believed J.E.'s outcry statements. However, Rivera fails to consider that his trial counsel put J.E.'s credibility at issue numerous times throughout the trial and especially during his first cross-examination of Investigator Flores. Specifically, during his first cross-examination, Rivera's trial counsel impeached Investigator Flores with evidence that police did not follow up in investigating C.L.'s boyfriend as a possible suspect and asked whether Investigator Flores "believe[d] the child" regarding whether Rivera was the perpetrator of these offenses. Therefore, with respect to Investigator Flores, the State was entitled to question Investigator Flores on re-direct examination about J.E.'s truthfulness to rebut prior impeachment by Rivera's trial counsel. See *Anderson*, 717 S.W.2d at 629; *Skeen*,

15

96 S.W.2d at 578; *see also Sepulveda*, 2009 Tex. App. LEXIS 981, at *17. The same is true with respect to S.E. and Goltz's testimony. Rivera's trial counsel questioned S.E. and Goltz about the changes in J.E.'s stories regarding the incidents, thus putting J.E.'s credibility at issue. On re-direct examination, the State questioned S.E. and Goltz about whether J.E. would make up stories about Rivera. Therefore, because the State was entitled to rebut Rivera's prior impeachment of Investigator Flores, S.E. and Goltz regarding J.E.'s truthfulness, an objection would have likely been overruled. As such, we cannot say that Rivera has satisfied the first prong of the *Strickland* analysis. *See* 466 U.S. at 684. Accordingly, we overrule Rivera's second sub-issue.

## VI. THE PROSECUTOR'S CLOSING ARGUMENT

In his third sub-issue, Rivera contends that his trial counsel should have objected to statements made by the prosecutor during his closing argument about J.E.'s truthfulness. The State argues that the complained-of statements during the prosecutor's closing argument constituted a permissible summation of the evidence and a reasonable deduction from the evidence; therefore, Rivera's trial counsel did not err in failing to object to the State's closing argument because such an objection likely would not have been successful.

### A. Applicable Law

Permissible jury argument generally falls into one of four areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) an answer to the argument of opposing counsel; or (4) a plea for law enforcement. *Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008); *Berry v. State*, 233 S.W.3d 847, 859 (Tex. Crim. App. 2007).

16

Even when an argument exceeds the permissible bounds of these approved areas, such will not constitute reversible error unless, in light of the record as a whole, the argument is extreme or manifestly improper, violative of a mandatory statute, or injects new facts harmful to the accused into the trial proceeding.

*Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000) (citing *Todd v. State*, 598 S.W.2d 286, 296-97 (Tex. Crim. App. 1980)). "The remarks must have been a willful and calculated effort on the part of the State to deprive appellant of a fair and impartial trial." *Id.* (citing *Cantu v. State*, 939 S.W.2d 627, 633 (Tex. Crim. App. 1997)).

Nevertheless, when analyzing any harm that may have been caused by an improper jury argument, we examine the following factors: (1) the severity of the misconduct (the magnitude of the prejudicial effect of the prosecutor's remarks); (2) measures adopted to cure the misconduct (the efficacy of any cautionary instruction by the judge); and (3) the certainty of conviction absent the misconduct (the strength of the evidence supporting the conviction). *Ramon v. State*, 159 S.W.3d 927, 929 (Tex. Crim. App. 2004) (citing *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh'g)).

In analyzing the State's remarks during closing argument, we must not consider the statement in isolation; instead, we should review the closing arguments of both parties in order to determine the context in which the complained-of statements were made. *See Wilson v. State*, 938 S.W.2d 57, 61 (Tex. Crim. App. 1996) ("The applicable legal standard of review is whether, in light of the record as a whole, there is a reasonable possibility the improper argument might have contributed to appellant's conviction."); *see also Ozuna*, 199 S.W.3d at 613 (holding that the complained-of jury argument is considered in light of the record as a whole).

## B. Discussion

On appeal, Rivera specifically complains about the following statements made during the State's closing argument:

> I mean, I—I hope, when you go back to deliberate and you think about that that—that troubles you as much as it troubles me because it doesn't make any sense that [J.E.] would lie about this only because she's been told she can't come around because she's making the house dirty, and she is the only one making this claim.
>
> . . . .
>
> So—so why would [J.E.] make up a story that gets her, oh, my God, in all this hot water? I mean, she had to get up here and say things in front of—in front of 13 total strangers? I mean, imagine if you had to do that. Imagine—we're not talking about raping. Imagine if some said, "Juror, take the stand and talk about the way things are with your wife at night," I mean, you would be mortified, right? So how do you think that little kid felt like when she had to sit here and talk about what happened, right. Why would she put herself through that if it wasn't true? I mean, that just doesn't make sense.
>
> . . . .
>
> And you saw her demeanor when she was up there. I mean, what does that tell you? She's telling the truth. I mean, what nine or ten year old would know that a man's erect penis is big, brown and pointy, right? I mean, where do you think she got that? Do you think that just came to her in her dreams?

During trial, Rivera's trial counsel repeatedly asked witnesses about the changes in J.E.'s stories regarding the incidents. Furthermore, both Blanca and Rivera testified that J.E., C.L., S.E., and others lie constantly to get their way. Therefore, Rivera's defensive theory was that these allegations were falsely made in an attempt to get Rivera in trouble, which as Rivera explained, was probably due to Rivera's refusal to baby-sit his grandchildren anymore. In his closing statement, the prosecutor responded to this defensive theory and explained that J.E. did not have a motive to lie about

18

Rivera.  *See Brown*, 270 S.W.3d at 570; *Berry*, 233 S.W.3d at 859; *see also Wolfe v. State*, 917 S.W.2d 270, 280-81 (Tex. Crim. App. 1996) (stating that rhetorical questions are generally within the scope of jury argument so long as they are based upon a reasonable deduction from the evidence and that a prosecutor "may argue his opinions concerning issues in a case so long as the opinions are based on evidence in the record and not as constituting unsworn testimony").  The prosecutor also summarized the evidence adduced at trial, including testimony from J.E. about what Rivera's penis looked like.  *See Brown*, 270 S.W.3d at 570; *Berry*, 233 S.W.3d at 859.  Because the portion of the prosecutor's closing argument about which Rivera complains constitutes a summation of the evidence and a response to Rivera's defensive theory, we cannot say that the prosecutor's closing argument was improper.  *See Brown*, 270 S.W.3d at 570; *Berry*, 233 S.W.3d at 859.  Thus, an objection by Rivera's trial counsel to the prosecutor's closing argument likely would not have been successful.  As a result, we overrule Rivera's third sub-issue.

## VII.  CONCLUSION

Having overruled all of Rivera's issues on appeal, we affirm the judgment of the trial court.

_____
ROGELIO VALDEZ
Chief Justice

Do not publish.
TEX. R. APP. P. 47.2(b)
Delivered and filed the
10th day of March, 2011.