

NUMBER 13-12-00295-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

NOEL BAIRD NORWOOD III,                                    Appellant,

v.

THE STATE OF TEXAS,                                         Appellee.

On appeal from the 410th District Court
of Montgomery County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Benavides and Longoria
Memorandum Opinion by Chief Justice Valdez**

A jury convicted appellant, Noel Baird Norwood III, of aggravated sexual assault
of a child. Tex. Penal Code Ann. § 22.021(a)(1)(B) (West 2007). By two issues,
appellant challenges the legal sufficiency of the evidence supporting his conviction, and

the trial court's denial of his request for a hearing on his motion for new trial. We affirm.[1]

## I. BACKGROUND[2]

During her testimony, the alleged victim, K.W., a seven year old girl, stated that appellant awoke her in her bedroom by shaking her, brought her to their living room, and "put his finger in her 'tee-tee.'" K.W. later identified the "tee-tee" as female genitalia on a drawing and doll admitted into evidence. This exchange between the attorney for the State and K.W. followed:

PROSECUTOR: Now then, when—his pinky you said touched you. How did it touch you?

K.W.: It like—like, touched my outside hole.

PROSECUTOR: Your outside hole?

K.W.: Uh-huh.

PROSECUTOR: Is that a yes?

K.W.: Yes, ma'am.

PROSECUTOR: Did—when it touched your outside hole, you mean the hole that's by your tee-tee?

K.W.: Yes, ma'am.

PROSECUTOR: Did his pinky go inside your hole at all?

K.W.: No, ma'am.

PROSECUTOR: Okay. Did it go in past—to get to your hole, did it go in past part of your tee-tee?

---

[1] This case is before this Court on transfer from the Ninth Court of Appeals in Beaumont pursuant to an order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2005).

[2] Because this is a memorandum opinion and the parties are familiar with the facts, we will not recite them here except as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* TEX. R. APP. P. 47.4.

K.W.:                No.

. . .

PROSECUTOR:    Did any part of his pinky go in just a little bit?

K.W.:                Yes, ma'am.

PROSECUTOR:    Tell me about that.

K.W.:                It just went in a little bit and I felt it and I was very tired.

PROSECUTOR:    What do you mean you were tired?

K.W.:                I was—I was asleep, but I had—I had school and I was very tired and I hadded [sic] to go to sleep.

PROSECUTOR:    All right.  Now then, did—when he touched your tee-tee, did it—was it over the clothes of your pajamas or under the clothes?

K.W.:                Under.

PROSECUTOR:    How did his hand get under your clothes?

K.W.:                He pulled it down.

PROSECUTOR:    Were you wearing anything under your pajama bottoms besides just the pajama bottoms?

K.W.:                Panties.

PROSECUTOR:    And did his hand go on top of the panties or under the panties?

K.W.:                On top.

PROSECUTOR:    Did his finger ever go in under the panties?

K.W.:                No, ma'am.

PROSECUTOR:    And what—his finger, did it move when it was on your panties?

3

K.W.:           No, ma'am.

PROSECUTOR:     Then what happened?

K.W.:           Then I asked him, can I go to bed; and then he said, yes; and then I walked into bed.

. . .

PROSECUTOR:     How did it feel when this was happening to you?

K.W.:           Not very comfortable.

PROSECUTOR:     Okay.  Why was that?

K.W.:           Because—because I never had no one else did that before; and I just—it just felt wrong.

PROSECUTOR:     Did it hurt at all?

K.W.:           No, ma'am.

. . .

PROSECUTOR:     I have a little doll with me.  It's just one of my little girl's dolls.  Can you show me what you—and can you stand up so the jury can see what you're doing? Can you show me what you showed me before?

THE COURT:      Pardon me.  Let the record show this is apparently an unmarked exhibit.  It does appear to be a children's doll figure about 12 to 14 inches long at the greatest.  It is clothed in shorts and a top, it appears; otherwise, there's no other clothing.

PROSECUTOR:     Yes, sir.  Thank you, Your Honor.

K.W.:           It went in like half.

PROSECUTOR:      What do you mean "half?"

K.W.:           It didn't, like, really touch my hole.  It just went in, like, a little bit.

PROSECUTOR:     Okay.   And where did it go in just a little bit?

4

K.W.:               I don't know.

PROSECUTOR:         So, when you say you're not sure if it went inside, were you talking about inside the hole?

K.W.                No, ma'am.

. . .

PROSECUTOR          If any at all, can you show us how much of the pinky went inside you—

K.W.                Um—

PROSECUTOR          —using your pinky?

K.W.                About this much.

THE COURT:          You're saying on her own finger or pinky; is that right?

PROSECUTOR:         Yes, Your Honor.

THE COURT:          Okay.

K.W.:               Right here.

THE COURT:          Can you raise your hands up a little bit?

K.W.:               Right here.

THE COURT:          Okay.  It appears, for the record, that the child is using her right hand with the pinky, or last finger extended upward, and that she used her left hand to try—apparently to—in response with some portion of her small finger of her right hand extended above her left hand.  I think that's what I saw.  That's what I say for the record.  If anyone wants to add correction, you may do so.

Next the State called forensic nurse examiner Tiffany Dusang, who received K.W.'s outcry.  She testified that, in her experience, when children have been touched on the "female genitalia, they usually use the word 'on' and usually that means they've been touched on the fatty outer lips, just on top."  She stated that "if it's gone past the

5

fatty outer lips, the labia majora, which is actually the beginning of the female genitalia, they usually always say, 'in.'" She testified that, when discussing penetration with victims, she clarifies whether or not the contact was "was inside those fatty outer lips." Dusang also testified that she believed penetration had occurred after performing a vaginal swab, and that K.W. told her that appellant had touched her "in" her vagina. Dusang, however, admitted that she did not remember much of her conversation with K.W. because she performs many of these investigations. The State also introduced Dusang's medical examiner report on K.W. into evidence, which included notes written by Dusang indicating that, during her outcry, K.W. reported to Dusang that Norwood touched her "in" her vagina.

## I.  LEGAL SUFFICIENCY

Appellant was indicted under section 22.021(a)(1)(B) of the Texas Penal Code for intentionally or knowingly causing the penetration of the female sexual organ of a child by any means; and the child was younger than fourteen years of age. TEX. PENAL CODE ANN. § 22.021(a)(1)(B). Appellant argues that the State presented insufficient evidence to establish that penetration occurred.

### A. Standard of Review

"When reviewing a case for legal sufficiency, we view all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Winfrey v. State*, 323 S.W.3d 875, 878–79 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Accordingly, "we 'determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when

6

viewed in the light most favorable to the verdict.'" *Id.* at 879 (quoting *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) (citing *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007)). "It has been said quite appropriately, that '[t]he appellate scales are supposed to be weighted in favor of upholding a trial court's judgment of conviction, and this weighting includes, for example, the highly deferential standard of review for legal-sufficiency claims.'" *Id.* (quoting *Haynes v. State*, 273 S.W.3d 183, 195 (Tex. Crim. App. 2008) (Keller J., dissenting) (citing *Jackson*, 443 U.S. at 319)). "We must therefore determine whether the evidence presented to the jury, viewed in the light most favorable to the verdict, proves beyond a reasonable doubt that appellant" committed the crime for which the jury found him guilty. *Id.* "It is the obligation and responsibility of appellate courts 'to ensure that the evidence presented actually supports a conclusion that the defendant committed the crime that was charged.'" *Id.* at 882 (quoting *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007)).

Additionally, in our analysis of the verdict, we recognize that the jury is the exclusive judge of the credibility of the witnesses and the weight to be given their testimony. *Ozuna v. State*, 199 S.W.3d 601, 610 (Tex. App.—Corpus Christi 2006, no pet.). The jury may accept or reject all or part of the evidence. *Id.* The jury may also draw reasonable inferences and make reasonable deductions from the evidence. *Id.*

### B. Applicable Law

Under Section 22.01, "penetration" is defined as:

[T]o enter into" or 'to pass through.' *See, e.g., Webster's Third New International Dictionary*, p. 1670 (Merriam-Webster 1981). Thus, in common parlance, mere contact with the outside of an object does not amount to a penetration of it. But pushing aside and reaching beneath a

7

natural fold of skin into an area of the body not usually exposed to view, even in nakedness, is a significant intrusion beyond mere external contact.

*Woodall v. State*, 376 S.W.3d 134, 138 (Tex. App.—Texarkana 2012, no pet.) (quoting *Vernon v. State*, 841 S.W.2d 407, 409 (Tex. Crim. App. 1992)). Conduct can accurately be described as penetration "so long as [the] contact with [the complainant's] anatomy could reasonably be regarded by ordinary English speakers as more intrusive than contact with her outer vaginal lips." *Cornet v. State*, 359 S.W.3d 217, 226 (Tex. Crim. App. 2012) (quoting *Vernon*, 841 S.W.2d at 409). Additionally, "tactile contact beneath the fold of complainant[']s external genitalia amounts to penetration within the meaning of the aggravated sexual assault statute, since vaginal penetration is not required, but only penetration of the 'female sexual organ.'" *Steadman v. State*, 280 S.W.3d 242, 247–48 (Tex. Crim. App. 2009) (quoting *Vernon*, 841 S.W.2d at 409–10). The Court of Criminal Appeals has noted that "the statute does not criminalize penetration of the vagina, but the broader conduct of 'penetration of the . . . sexual organ' of the child." *Cornet v. State*, 359 S.W.3d 217, 226 (Tex. Crim. App. 2012) (citing *Vernon*, 841 S.W.2d at 409. Further, the Court has held that contact outside of the victim's underwear can constitute penetration. *Vernon*, 841 S.W.2d at 409–410; *see also Belasco v. State*, No. 01-97-00666-CR, 1999 Tex. App. LEXIS 4320, at **5–6 (Tex. App.—Houston [1st Dist.], June 10, 1999, pet. ref'd) (mem. op., not designated for publication).

Moreover, the testimony of a child sexual abuse victim alone is sufficient to support a conviction for aggravated sexual assault. TEX. CODE CRIM. PROC. ANN. art. 38.07 (West 2005); *see O'Hara v. State*, 837 S.W.2d 139, 141–42 (Tex. App.—Austin 1992, pet. ref'd) (finding that victim testimony, by itself, is sufficient evidence of

8

penetration to support a conviction); *Garcia v. State*, 563 S.W.2d 925, 928 (Tex. Crim. App. 1978). Courts give wide latitude to testimony given by child victims of sexual abuse. *See Villalon v. State*, 791 S.W.2d 130, 134 (Tex. Crim. App. 1990) (en banc). The victim's description of what happened need not be precise, and the victim is not expected to display the same level of sophistication as an adult. *Id.* A child victim need not testify to penetration, which the State may prove through circumstantial evidence. *See id.* There is no requirement that the victim's testimony be corroborated by medical or physical evidence. *Kemple v. State*, 725 S.W.2d 483, 485 (Tex. App.—Corpus Christi 1987, no writ). Further, outcry testimony alone can be sufficient to sustain a conviction for aggravated sexual assault. *Rodriguez v. State*, 819 S.W.2d 871, 873–74 (Tex. Crim. App. 1991); *Kimberlin v. State*, 877 S.W.2d 828, 831–32 (Tex. App.—Fort Worth 1994, pet. ref'd). Notably, even if the victim recants or denies her outcry statements when testifying at trial, the jury is free to disbelieve the victim's recantation and credit her previous statements. *Saldana v. State*, 287 S.W.3d 43, 60 (Tex. App.—Corpus Christi 2008, pet. ref'd) (citing *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991)).

### C. Analysis

In the present case, appellant argues that the evidence was insufficient to support a jury finding that penetration occurred because "when [K.W.] was specifically questioned regarding if his finger went inside of her, she remained consistent in saying that he had not." In a similar case before this Court, an outcry witness testified that a child victim of sexual assault reported to her that the appellant "stuck his finger inside her private parts." *Saldana*, 287 S.W.3d at 59 n.6. The victim, however, at trial,

answered "no" when asked if appellant put his finger inside her vagina and answered that he only touched outside her vagina. *Id.* We found that the jury was entitled to disbelieve the victim's testimony at trial and that the state had presented legally sufficient evidence for the jury to find that penetration had occurred. *Id.* at 60.

Here, throughout her testimony and during her outcry, as noted by Dusang, K.W. consistently used the word "in" when referring to how appellant touched her genitals. Furthermore, Dusang testified that when a child says "in," she is indicating that more intrusive contact than exterior touching occurred. Additionally, K.W. testified that appellant's finger "went in like a little bit" and "went in like half." And, when asked to demonstrate how she was touched, she extended her finger in a manner indicating that contact more intrusive than mere touching of the outer lips occurred.

Furthermore, K.W.'s testimony was not inconsistent; rather her answers indicated her uncertainty regarding the exact meaning of the term "inside." As noted above, children cannot be expected to testify with the same specificity as an adult. *See Villalon*, 791 S.W.2d at 134. Regardless, even if we were to determine that K.W.'s testimony was inconsistent or that she recanted her accusation of penetration, the jury was entitled to disbelieve any inconsistent testimony or denial proffered by K.W. or to disregard it as the confusion of a small child. *See Saldana*, 287 S.W.3d at 60; *Villalon*, 791 S.W.2d at 134.

The jury was presented with evidence of penetration including K.W.'s repeated use of the word "in", her description and demonstration of the contact, the reference to pain in her outcry, and the testimony and report of witness Dusang. Viewing all this evidence in the light most favorable to the verdict, we conclude that a rational trier of

fact could have found beyond a reasonable doubt that digital penetration occurred.  We overrule appellant's first point of error.

## II.     MOTION FOR NEW TRIAL

Following the trial, on February 10, 2012, appellant filed his motion for a new trial arguing that the verdict was "contrary to the law and evidence."  He attached an affidavit executed by Child Protective Services caseworker Jordana Hebert in which she alleged that CPS had previously removed K.W. from her grandmother's home partially because she told K.W. to "say bad things" about appellant.  On March 23, 2012, the trial court judge signed the order for a setting and wrote "Hearing on Motion for New Trial Denied."  The motion for new trial was overruled by operation of law.

## A.     Standard of Review and Applicable Law

We use an abuse of discretion standard to review a trial court's decision not to hold a hearing on a motion for new trial.  *State v. Gonzalez*, 855 S.W.2d 692, 696 (Tex. Crim. App. 1993); *Macri v. State*, 12 S.W.3d 505, 510 (Tex. App.—San Antonio 1999, no pet.).  The purposes of a new trial hearing are (1) to determine whether the case should be retried or (2) to complete the record for presenting issues on appeal.  *Hobbs v. State*, 298 S.W.3d 193, 203 (Tex. Crim. App. 2009).  While such a hearing is not an absolute right, a trial judge abuses his discretion by failing to hold a hearing if the motion and accompanying affidavits (1) raise matters which are not determinable from the record and (2) establish reasonable grounds showing that the defendant could potentially be entitled to relief.  *Id.*  This second requirement limits and prevents "fishing expeditions."  *Id.*; *Reyes v. State*, 849 S.W.2d 812, 816 (Tex. Crim. App. 1993).  A new-trial motion must be supported by an affidavit specifically setting out the factual basis for

11

the claim. *See* TEX. R. APP. P. 21.3(h); *Hobbs*, 298 S.W.3d at 203. If the affidavit is conclusory, is unsupported by facts, or fails to provide requisite notice of the basis for the relief claimed, no hearing is required. *Id.*

Although a defendant need not plead a prima facie case in his motion for new trial, he must at least allege sufficient facts that show reasonable grounds to demonstrate that he could prevail. *Id.; Smith v. State*, 286 S.W.3d 333, 338 (Tex. Crim App. 2009). For example, in *Smith v. State*, the Court of Criminal Appeals reversed the Tenth Court of Appeals, finding that a trial court did not abuse its discretion by not holding hearing on a defendant's motion for new trial based on ineffective assistance of counsel because he failed to establish reasonable grounds to demonstrate that he could meet both prongs of the *Strickland* test. 286 S.W.3d at 338 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984). This case clarifies that if an appellant must satisfy two elements to prevail in a motion for new trial, a trial court only abuses its discretion in failing to hold a hearing if the claimant provides facts supporting reasonable grounds for both elements. *Id.*

## B.    Discussion

Appellant contends that he was entitled to a hearing on his motion for new trial. *See* TEX. R. APP. P. 21.6. He argues that he provided a motion for new trial and affidavit asserting reasonable grounds for relief that were not determinable from the record. Appellant supported his motion by attaching Hebert's affidavit. This evidence was never introduced at trial and is not part of the record; therefore, Norton's motion must be based on a claim of newly discovered evidence.[3] *See* TEX. CODE CRIM. PROC. ANN. art.

---

[3] Because the evidence is indeterminable from the record, we conclude that appellant has satisfied the first requirement entitling him to a hearing. *See Hobbs,* 298 S.W.3d at 203.

12

40.001 (West 2012) ("A new trial shall be granted an accused where material evidence favorable to the accused has been discovered since trial."). In order to prevail in a motion for new trial based on newly discovered evidence, the appellant must show, among other things, that the new evidence was unavailable at trial.[4] *Lee v. State,* 186 S.W.3d 649, 659–60 (Tex. App.—Dallas 2006, pet. ref'd); *see also Wallace v. State,* 106 S.W.3d 103, 108 (Tex. Crim. App. 2003). However, appellant has not explained on appeal how he provided reasonable grounds in his motion to demonstrate that the evidence was unavailable at trial.[5]

Nonetheless, appellant cites our previous decision in *Garcia* to support his claim. *See Garcia v. State*, 291 S.W.3d 1, 27 (Tex. App.—Corpus Christi 2008, no pet.) (determining whether reasonable grounds existed on the basis of newly discovered evidence). In *Garcia*, a defendant provided an affidavit in a motion for new trial of a person stating that another party "told him of information that constituted newly discovered evidence favorable to appellant, followed by an affidavit of someone in appellant's behalf stating that, though requested to do so, [the party] had refused to make an affidavit thereto." *Id.* The State, in *Garcia,* did not argue that the appellant failed to allege or provide facts indicating that the evidence was newly discovered, but instead contended that the affidavit was collateral and provided no indication that it was

---

[4] To prevail the defendant must show the following: (1) the newly discovered evidence was unknown or unavailable to him at the time of his trial; (2) his failure to discover or obtain the evidence was not due to a lack of diligence; (3) the new evidence is admissible and not merely cumulative, corroborative, collateral, or impeaching; and (4) the new evidence is probably true and will probably bring about a different result in another trial. *Lee v. State*, 186 S.W.3d 649, 659–60 (Tex. App.—Dallas 2006, pet. ref'd); *see also Wallace v. State*, 106 S.W.3d 103, 108 (Tex. Crim. App. 2003).

[5] Appellant also does not allege that the information contained in the affidavit was *Brady* evidence or that it was not discovered due to ineffective assistance of counsel. *Brady v. Maryland*, 373 U.S. 83, 87 (1963) (holding that the prosecution's suppression of evidence favorable to the accused upon request violated the due process clause of the Fourteenth Amendment).

13

probably true or would change the outcome of the trial. *Id.* at 31. We reasoned that, in his motion, the appellant did not need to prove a prima facie case, and therefore did not need to establish that the evidence was probably true or that it was not collateral; instead, we found that the affidavit created a fact issue as to which statements constituted admissible newly discovered evidence and the effect this evidence would have on a new trial. *Id.* at 31–34. We specifically held that the trial court "abdicate[d] its fact finding function and denie[d] the accused a meaningful appellate review." *Id.* at 43.

*Garcia*, however, differs substantially from the present case because, in *Garcia*, the appellant specifically alleged that his motion was based on the existence of new evidence. *See id.* at 9. Furthermore, the appellant in *Garcia* provided the trial court, in the affidavit attached to the motion, with facts supporting the proposition that the evidence was unavailable at trial as the affiant explicitly stated that the evidence was newly discovered. *Id.* at 9–12. This sufficiently demonstrated to the court that the appellant was entitled to an opportunity to present these facts to the court in a hearing. *Id.* at 43; *see Hobbs,* 298 S.W.3d at 203 (reasoning that facts must provide the trial court with requisite notice of the basis for the relief claimed)*.*

Appellant, instead, based his motion on the general grounds that the verdict was contrary to the law and evidence, and, as the Court of Criminal Appeals has noted, "[a] trial judge is certainly within his discretion in declining to set a motion alleging such a general ground for an evidentiary hearing." *Clarke v. State*, 270 S.W.3d 573, 580 (Tex. Crim. App. 2008). Furthermore, appellant failed to provide any facts in support of a proposition that the evidence was newly discovered and did not even allege that the evidence was unavailable at trial. The trial court was thus not on notice of reasonable

14

grounds on which appellant could prevail on his motion and, therefore, unlike in *Garcia*, the trial court had no fact-finding duty. *See Garcia,* 291 S.W.3d at 27; *Clarke*, 270 S.W.3d at 580; *Hobbs*, 298 S.W.3d at 203; *Smith*, 286 S.W.3d at 338 (reasoning that, to be entitled to a hearing on a motion for new trial based on ineffective assistance of counsel, appellant had to provide reasonable grounds for both prongs of the *Strickland* test).

Accordingly, the trial court acted within its discretion in dismissing the motion without a hearing. Appellant's second issue is overruled.[6]

### III.    CONCLUSION

We affirm the trial court's judgment.

_____
ROGELIO VALDEZ
Chief Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
18th day of April, 2013.

---

[6] The State also argues that the trial court acted within its discretion in denying the motion for new trial without a hearing because the motion was not presented to the trial court within ten days of its filing. However, we have assumed, without deciding, that the motion was properly presented.

15