

# NUMBER 13-11-00170-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

**ERNESTO BERLANGA,**                                                          **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                          **Appellee.**

## On appeal from the 107th District Court
## of Cameron County, Texas.

## MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Benavides and Longoria
Memorandum Opinion by Chief Justice Valdez**

By three issues, appellant, Ernesto Berlanga, appeals his conviction for aggravated assault. *See* TEX. PENAL CODE ANN. § 22.02(a)(2)(b) (West 2011). Appellant argues that (1) the evidence was insufficient to support the aggravating factors for the offense; (2) the trial court violated his right to a fair trial by not requiring a

unanimous verdict; and (3) the trial court violated his confrontation clause rights because two of the State's witnesses' previous reports were not available at trial to be used for impeachment. We affirm.

## I. BACKGROUND

Berlanga was charged with aggravated assault for an incident at The Carrizales-Rucker jail, where he was incarcerated for an unrelated offense. The indictment, in relevant part, alleged that Berlanga "on or about the 15th day of July 2006 . . . . did then and there intentionally, knowingly, or recklessly cause bodily injury to Ruben Villanueva by stabbing Ruben Villanueva, and the defendant did then and there exhibit a deadly weapon, to-wit, pen or object unknown to the grand jury, during the commission of said assault."

At trial, the victim, Ruben Villanueva, testified that four inmates began harassing him in his cell. He testified that Berlanga began interrogating him about his gang affiliation and then ordered him to remove his jumpsuit so that he could inspect him for gang tattoos. He testified that Berlanga informed him that he was "capitas," or leader, of Unit C1, home of the Vallucos Gang. He stated that Berlanga began waving a pen at him and threatening him. He stated that he could clearly identify Berlanga because he was standing very near him. Villanueva testified that someone to his side struck him in the head with a coffee cup. Vilanueva then testified that Berlanga swung at him with a pen twice, and that on the second swing the pen "caught [him] in the eye." On cross-examination, he clarified that he "got hit in the eye" and that he felt the pen "go in" after Berlanga swung at him the second time. Villanueva stated that the men then started assaulting him with cups and their hands and feet until he eventually blacked out. He

2

stated that, after the attack, he couldn't see and he was bleeding everywhere. He testified, "I got to my feet, and I grabbed a towel to put over my eye 'cause I was gushing blood out from everywhere, from the top of my head, my nose, and my eye." Villanueva testified that he eventually required surgery on his eye, that he now has nerve damage, and that he cannot see very well out of his eye. The prosecution also elicited the testimony of two jailers who spoke with both Berlanga and Villanueva in the aftermath of the alleged assault, and entered into evidence medical records detailing the injuries sustained by Villanueva and pictures of the injuries. A jury found Berlanga guilty of aggravated assault, and after he pleaded true to an enhancement allegation, the trial court sentenced him to twenty-five years in prison.

## II.    LEGAL SUFFICIENCY AND FATAL VARIANCE

### A. Standard of Review

"When reviewing a case for legal sufficiency, we view all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Winfrey v. State*, 323 S.W.3d 875, 878–79 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Accordingly, "we 'determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict.'" *Id.* at 879 (quoting *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) (citing *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007)). "It has been said quite appropriately, that '[t]he appellate scales are supposed to be weighted in favor of upholding a trial court's judgment of conviction, and this weighting includes, for example, the highly deferential standard of

review for legal-sufficiency claims.'" *Id.* (quoting *Haynes v. State*, 273 S.W.3d 183, 195 (Tex. Crim. App. 2008) (Keller J., dissenting) (citing *Jackson*, 443 U.S. at 319)). "We must therefore determine whether the evidence presented to the jury, viewed in the light most favorable to the verdict, proves beyond a reasonable doubt that appellant" committed the crime for which the jury found him guilty. *Id.* "It is the obligation and responsibility of appellate courts 'to ensure that the evidence presented actually supports a conclusion that the defendant committed the crime that was charged.'" *Id.* at 882 (quoting *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007)).

Additionally, in our analysis of the verdict, we recognize that the jury is the exclusive judge of the credibility of the witnesses and the weight to be given their testimony. *Ozuna v. State*, 199 S.W.3d 601, 610 (Tex. App.—Corpus Christi 2006, no pet.). The jury may accept or reject all or part of the evidence. *Id.* The jury may also draw reasonable inferences and make reasonable deductions from the evidence. *Id.*

### B. Discussion

Berlanga first argues that the evidence was insufficient to support a jury finding that he caused serious bodily injury. The statute defines serious bodily injury as "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." TEX. PENAL CODE § 1.07)(a)(46) (West 2011). The State elicited testimony from Villanueva that he sustained puncture wounds, lost proper eye function, was bleeding profusely, and passed out as a result of the assault. The State also presented medical records showing that he suffered a fractured orbital bone. Additionally, the medical records presented by the State indicated that Villanueva's eye was swollen shut and

4

that he was unable to open it. The State also presented pictures of Villanueva's injuries showing blood and severe swelling around Villanueva's eye. Viewing the evidence in the light most favorable to the verdict, this is sufficient evidence to allow the jury to find that Berlanga's assault caused serious bodily injury as alleged in the indictment. *See id.*

Berlanga next argues that the State presented insufficient evidence to support a jury finding that he committed an assault with a deadly weapon. The statute defines a deadly weapon as "anything that in the manner of use or intended use is capable of causing death or serious bodily injury." TEX. PENAL CODE § 1.07(a)(17)(B). Because the State presented evidence that Berlanga used a pen in a manner that caused Villanueva severe eye injuries, we conclude that there is legally sufficient evidence to support a jury finding that Berlanga committed an assault with a deadly weapon. *See id.*

Berlanga also argues that there was insufficient evidence that Villanueva was stabbed as alleged in the indictment and that there was therefore a "fatal variance" between the allegations in the indictment and the evidence presented. He, however, cites no law indicating what the State must show to prove that a stabbing occurred. The record reveals that the State presented evidence showing that Berlanga used a pen in a manner that caused Villanueva to sustain severe eye injuries including puncture wounds and that Vilanueva felt the pen "go in" his eye, indicating that he had been stabbed. Furthermore, even if the evidence was only sufficient to establish that Berlanga "hit" Villanueva and not that he "stabbed" him, this would not create a "fatal variance." Under Texas law, "[t]he object of the doctrine of variance is to avoid surprise, and to be material it must prejudice a defendant's rights. Only a material variance is

5

fatal." *Stevens v. State,* 891 S.W.2d 649, 650 (Tex. Crim. App. 1995), *cited with approval in Grant v. State,* 970 S.W.2d 22, 23 (Tex. Crim. App. 1998).  Here, even if the State presented evidence that Berlanga "hit" instead of "stabbed" Villanueva, Berlanga would not have suffered surprise or prejudice, and we would therefore find that there was no material variance between the evidence presented and the indictment.  *See id.*

We overrule Berlanga's first issue.

### III.    UNANIMOUS VERDICT

In his second issue, Berlanga contends that the trial court committed error by allowing the jury to find appellant guilty of aggravated assault by alternative means. The jury charge contained two separate instructions concerning aggravated assault. The first instructed the jury that "[a] person commits aggravated assault if the person commits an assault, as defined above, and uses or exhibits a deadly weapon during the commission of the assault."  The charge then stated, "[a] person commits aggravated assault if the person commits an assault, as defined above, and causes serious bodily injury to another."  Berlanga correctly asserts that this authorized a guilty verdict without requiring the jury to make a unanimous finding on the aggravating factor.[1]  However, such a finding is not required by Texas law.

In *Landrian v State,* the court of criminal appeals resolved the exact issue we confront today.  268 S.W.3d 532, 535–42 (Tex. Crim. App. 2008).  The court reasoned that, for the crime of aggravated assault, serious bodily injury and the use of a deadly weapon do not create two distinct crimes but "are simply the way in which the simple

---

[1] Under Texas Law, to support a guilty verdict, a jury must make a unanimous finding that a defendant committed one specific crime, but not on the means by which he committed it.  *Landrian v. State*, 268 S.W.3d 532, 535 (Tex. Crim. App. 2008) (citing *Stuhler v. State*, 218 S.W.3d 706, 716 (Tex. Crim. App. 2007)); *Ngo v. State*, 175 S.W.3d 738, 745 (Tex. Crim. App. 2005).

6

assault becomes a more serious offense." *Id.* at 540. The court held that the jury needed to make a unanimous finding only on the gravamen of the offense, causing bodily injury, not on the aggravating factor and that therefore the trial court did not err by submitting the instructions on the aggravating factors in the disjunctive. *Id.* at 535–542.

In accordance with the *Landrian* court, we hold that a unanimous finding on the aggravating factor of the assault was not required to support a guilty verdict. *See id.* We overrule Berlanga's second issue.

## IV.    CONFRONTATION CLAUSE

In his final issue, Berlanga argues that he was "denied his constitutional right to effectively cross-examine witnesses against him" because "their previous statements or reports were not made available to defense counsel after they testified." The trial court held a hearing outside the presence of the jury at which defense counsel argued that Berlanga was denied his opportunity to effectively cross-examine witnesses against him.[2] Defense counsel asserted that two to three jailers made statements in writing concerning their involvement in the alleged assault in 2006 and that these statements were not made available to the defense. He stated he was uncertain as to whether they were reports or statements because he had not seen them. Over Berlanga's objection, the trial court permitted two Cameron County jailers to testify.

---

[2] Notably, defense counsel at trial also objected arguing that a *Brady* violation had occurred. On appeal, Berlanga does not raise an argument under *Brady v. Maryland*, 373 U.S. 83, 87 (1963) (holding that the prosecution's suppression of evidence favorable to the accused upon request violates the due process clause of the Fourteenth Amendment). Furthermore, we construe his trial counsel's contention that he was denied his opportunity to effectively cross-examine the jailers as a Confrontation Clause objection sufficient to preserve error for the issue he has raised on appeal. TEX. R. APP. P. 33.1 (requiring an objection to state "the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context").

7

The Confrontation Clause of the Sixth Amendment of the United States Constitution guarantees the right of an accused "to be confronted with the witnesses against him." The primary interest secured by the Confrontation Clause is the right of cross-examination. *Shelby v. State*, 819 S.W.2d 544, 546 (Tex. Crim. App. 1991) (citing *Douglas v. Alabama*, 380 U.S. 415, 418 (1965)). The Sixth Amendment's right of confrontation is a fundamental right and is applicable to the States by virtue of the Fourteenth Amendment. *Id.* (citing *Pointer v. Tex.*, 380 U.S. 400, 403 (1965)).

Berlanga has cited no case law indicating that a defendant's Confrontation Clause rights are violated when a prior report from a witness is lost and therefore unavailable at trial. To support his argument, Berlanga cites *Kentucky v. Stincer* in which the United States Supreme Court held that a defendant's rights were not violated when he was excluded from a competency hearing where witnesses testified against him, and *Shelby v. State* in which a defendant alleged a violation of his Confrontation Clause rights because the trial court explicitly limited the scope of a defendant's cross-examination. *Kentucky v. Stincer*, 482 U.S. 730, 747 (1987); *Shelby*, 819 S.W.2d at 546. Berlanga does not explain how these cases apply here, and they are clearly distinguishable from the present case as they involve challenges to trial court decisions to limit a defendant's confrontation of witnesses, not the unavailability of information to use for impeachment.

On appeal, Berlanga only challenges the trial court's denial of his right to effectively cross-examine the witnesses; he does not challenge the admissibility of the witness's testimony. He also does not allege bad faith on the part of the jailers or the

8

State in failing to preserve or provide the reports.[3] Berlanga does not suggest, and we do not find, that there was any action the trial court could have taken to further protect Berlanga's confrontation clause rights.

Furthermore, assuming a violation did occur, it was not harmless error. Confrontation Clause violations are subject to harm analysis. *Delaware v. Van Arsdall,* 475 U.S. 673, 684 (1986); *see also Shelby*, 819 S.W.2d at 546. "The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt." *Van Arsdall,* 475 U.S. at 684. Whether a violation of a defendant's Confrontation Clause rights is harmless depends upon a host of factors, "including (1) the importance of the witness'[s] testimony in the prosecution's case, (2) whether the testimony was cumulative, (3) the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, (4) the extent of cross-examination otherwise permitted, and, of course, (5) the overall strength of the prosecution's case." *Id.; see also Shelby*, 819 S.W.2d at 547. Here, the prosecution's case did not rely solely on the testimony of the jailers; much of the testimony provided was cumulative because it described the victim's injuries which were documented in medical records and photographs that were admitted into evidence; there was no evidence contradicting any of the jailers' testimony; Berlanga had an opportunity, free from restriction by the trial court, to fully cross-examine the jailers; and the prosecution's case was otherwise strong as the attorney for the State elicited testimony from the victim who was able to identify Berlanga as his assailant and provided medical

---

[3] As the State notes in its brief, Berlanga does not allege, nor does he identify any evidence suggesting, that the jailers, prosecution, or trial court acted in violation of his due process rights. *See Arizona v. Youngblood*, 488 U.S. 51, 57 (1988).

documentation and photographs of the victim's injuries.[4]  Given these facts, we conclude that any error committed by the trial court relating to Berlanga's right to confront the jailers was harmless beyond a reasonable doubt.

Because Berlanga fails to refer to an action taken by the trial court that violated his Confrontation Clause rights and the record indicates that any error was harmless, we overrule Berlanga's third issue.

## V.    CONCLUSION

We affirm the judgment of the trial court.

_____
ROGELIO VALDEZ
Chief Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
20th day of June, 2013.

---

[4] Regarding harm, Berlanga only argues, in his brief, that "[t]he difficulty of effectively cross-examining witnesses without having their previous statements or reports was clearly shown by the trial counsel."

10