

# NUMBER 13-21-00296-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

MARTIN PEREZ LEAL,                                                      Appellant,

v.

THE STATE OF TEXAS,                                                    Appellee.

## On appeal from the 24th District Court
## of DeWitt County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Longoria and Tijerina**
**Memorandum Opinion by Chief Justice Contreras**

Appellant Martin Perez Leal was convicted of continuous sexual abuse of a child, a first-degree felony, and sentenced to sixty-five years' imprisonment in the Texas Department of Criminal Justice Correctional Institutions Division. *See* TEX. PENAL CODE ANN. §§ 12.32, 21.02. By two issues which we address together, appellant argues that

the evidence was legally insufficient to support his conviction. We affirm.

## I.   BACKGROUND

On July 7, 2021, appellant was indicted on one count of continuous sexual abuse of a child. *See id.* § 21.02(b). The indictment alleged that on or about December 15, 2016, through November 30, 2018, appellant committed at least two acts of sexual abuse constituting the offense of indecency with a child by contact against his niece, Katie,[1] a child younger than fourteen years of age. *See id.* § 21.02(b), (c)(2). On August 12, 2021, appellant pleaded not guilty and waived his right to a jury trial. A bench trial commenced that same day. We summarize the relevant testimony.

### A.   Katie's Mother's Testimony

Katie's mother (Mother), appellant's sister-in-law, testified that after learning appellant had allegedly touched one of her nieces inappropriately, she asked her three children if anybody had done the same to them. The children initially denied that any inappropriate touching had occurred. A few days later, however, Katie's half-sister (Sister) approached Mother and stated that Katie "had mentioned to her that she was very uncomfortable around [appellant.]" In response, Mother spoke with Katie again and "asked her in more detail, [h]as anybody ever touched you or been inappropriate with you that you didn't like?" At that point, Katie "got emotional, [and] started crying."

Katie told Mother that appellant had, on several occasions, "touched her and kissed her on the mouth." These events occurred primarily at family social gatherings that Katie's extended family attended. Mother testified that Katie informed her of one occasion,

---

[1] To protect the child's identity, we refer to the child and relevant family members by pseudonyms. *See* TEX. R. APP. P. 9.8 cmt.

which took place during a family barbecue at appellant's house in Kenedy, Texas, when appellant took Katie into the bathroom, put her on the sink counter, and "pushed . . . his private parts up against her and began to kiss her with his tongue in her mouth." Katie told Mother that "it happened at [appellant's] house . . . quite a few times" and once more at another family event at the home of her aunt (Joy) and uncle (Ryan)—appellant's brother- and sister-in-law. Mother testified that she knew the latter instance occurred on her nephew's bunk bed but that she did not ask Katie for specific details about what transpired. Mother reported Katie's allegations to the Cuero Police Department and testified that Katie was then forensically interviewed and received counseling at Hope Child Advocacy Center (CAC).

## B. Katie's Testimony

Katie testified that she was born in December 2009 and that, as of the date of trial, she was eleven years old. She stated that appellant started inappropriately touching her when she was "about seven." The State asked Katie for further details regarding the bathroom sink incident in Kenedy that Mother had described. Katie stated that appellant picked her up, placed her on the sink counter, rubbed her back, and kissed her with his tongue in her mouth. The State asked Katie what she calls the areas where males and females "go to the bathroom," and Katie referred to those areas as the "middle parts." When asked whether appellant's middle part touched her during the sink incident, Katie answered, "No, ma'am."

The State next asked Katie whether there was ever an incident during which appellant touched her with his middle part, and she answered affirmatively. Katie testified

3

that during one instance, which happened at appellant's new house in Cuero, Texas, she and appellant were alone in the kitchen when appellant "hugged me, and he pressed my middle to his." Katie testified that she had previously confided in Sister that appellant had been inappropriately touching her. Sister told Katie to push appellant away and tell him he is too old for her if it happened again. Katie did exactly that in appellant's kitchen, but appellant "came back to [Katie] and started doing it, again."

Katie was also asked if "that kind of hug with the middle parts touching" took place anywhere else, and she stated that it happened at Joy and Ryan's house on her cousin's bunk bed. Katie described the event as follows:

> I was playing a game with my cousins, and [appellant] came in. I was laying down on my stomach. He was sitting up, and then he came to bed with me, and he lifted me up, and he made me—I gave him a hug, and then he just started rubbing me on my back, again.

The State asked Katie if appellant's middle touched her middle during the bunk bed incident, and she answered that "[she] honestly do[es]n't remember anymore." However, Katie later stated that appellant hugged her and kissed her with his tongue in her mouth on the bunk bed but that he did not "do anything with his private part."

On cross-examination, Katie testified that she was unsure of how many times appellant touched his middle part to hers but knew that it was more than once but "probably less than five [times]." She again described the incident that occurred in the kitchen of appellant's house and depicted another similar instance when appellant brought her to his bedroom, locked the door, and "then start[ed] pushing his private parts to [Katie's] while [they were] standing up." When asked "[w]hat caused [appellant] to stop" during the latter occasion, Katie stated she "was pretty sure [she] kicked him." Katie

4

testified that appellant would stick his tongue in her mouth during each instance of abuse and that the two were always fully clothed. The following exchange concluded Katie's testimony:

| [Defense Counsel]: | Ok. And just for clarification, in [appellant]'s house, did it happen more than two times, do you think? |
|---|---|
| [Katie]: | I am sure. |
| [Defense Counsel]: | Okay. And when I say "it," I'm talking about private parts, him trying to touch his private parts to your private parts. |
| [Katie]: | Yes, sir. |

## C. Michelle Rubio's Testimony

CAC forensic interviewer Michelle Rubio testified that Katie was referred to CAC in March 2019, and that she conducted Katie's forensic interview. Katie told Rubio that appellant "would be doing grownup relationship things to her," and that "she had told [appellant] to quit but that he would not quit and that he would squeeze it to mine." When Rubio asked Katie what she meant by "squeeze it," Katie "said that that was his middle part. She said he pushes it to [hers] upwards around her middle part." Katie informed Rubio that this happened at appellant's old house in Kenedy and new house in Cuero. Rubio noted that, per Sister's directions, Katie would tell appellant that she was too young for him, "but [appellant] would never say anything and . . . would open his legs and then grab his to hers [sic]." Katie noted "that she would feel very, very scared and that she didn't like it and that [appellant's] middle part was hard and soft and that it felt not good for her." Rubio handed Katie anatomical drawings of a boy and a girl and asked her to

5

circle what she referred to as "middle parts."[2] Katie circled the male and female genitalia. Katie also "pointed to [her] middle part" to indicate where appellant had touched her.

## D.     Defense Witness Testimony

Appellant's wife, Genieva Perez, testified that she recalled having family events at her home in Kenedy several years before trial and that Katie would attend with her family. Perez denied that appellant and Katie were ever alone together but conceded that she "didn't know one way or the other" whether appellant had an inappropriate relationship with Katie. Joy and Ryan each similarly testified that neither saw appellant alone with Katie but admitted they did not always know appellant's whereabouts during family get-togethers. And appellant testified that he neither kissed Katie nor touched her inappropriately.

After both parties rested, the trial court found appellant guilty of continuous sexual abuse of a child and sentenced him to sixty-five years' imprisonment. This appeal followed.

## II.     SUFFICIENCY OF THE EVIDENCE

By his first issue, appellant argues that the evidence was legally insufficient to prove any instances of indecency with a child by contact. *See id.* §§ 21.02(c)(2), 21.11(a)(1). By his second issue, appellant argues that even assuming sufficient evidence exists to prove one instance of sexual contact, there was insufficient evidence to prove the alleged sexual act occurred multiple times—a required element of continuous sexual abuse of a child. *See id.* § 21.02(c)(2).

---

[2] The drawings were submitted as State's Exhibits 1 and 2.

6

**A.    Standard of Review**

In reviewing the sufficiency of the evidence to support a conviction, we consider the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Stahmann v. State*, 602 S.W.3d 573, 577 (Tex. Crim. App. 2020) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). We consider both direct and circumstantial evidence as well as all reasonable inferences that may be drawn from the evidence and are not mere speculation. *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We resolve any evidentiary inconsistencies in favor of the verdict, keeping in mind that the factfinder is the exclusive judge of the facts, the credibility of the witnesses, and the weight to give their testimony. *Walker v. State*, 594 S.W.3d 330, 335 (Tex. Crim. App. 2020); *see* TEX. CODE CRIM. PROC. ANN. art. 38.04.

Sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Metcalf v. State*, 597 S.W.3d 847, 856 (Tex. Crim. App. 2020) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)); *see Romano v. State*, 610 S.W.3d 30, 34 (Tex. Crim. App. 2020). "The hypothetically correct jury charge accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Walker*, 594 S.W.3d at 336.

**B.      Applicable Law**

A person commits the offense of continuous sexual abuse against a child if:

(1)      during a period that is 30 or more days in duration, the person commits two or more acts of sexual abuse, regardless of whether the acts of sexual abuse are committed against one or more victims; and

(2)      at the time of the commission of each of the acts of sexual abuse, the actor is 17 years of age or older and the victim is:

(A)      a child younger than 14 years of age[.]

TEX. PENAL CODE ANN. § 21.02(b). The "acts of sexual abuse" alleged by the State in this case were indecency with a child by contact. *See id.* § 21.11(a). A person commits the offense of indecency with a child by contact if the person, with a child under the age of seventeen, "engages in sexual contact with the child or causes the child to engage in sexual contact." *Id.* "Sexual contact" includes (1) "any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child" or (2) "any touching of any part of the body of a child, including through clothing, with the anus, breast, or any part of the genitals of a person" provided said touching is done with "intent to arouse or gratify the sexual desire of any person." *Id.* § 21.11(c).

A child sexual abuse victim's testimony is sufficient to support a conviction based on that abuse. *Gonzalez v. State*, 522 S.W.3d 48, 57 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (citing TEX. CODE CRIM. PROC. ANN. art. 38.07). The victim's description of what happened to her need not be precise, and she is not expected to express herself at the same level of sophistication as an adult. *Reckart v. State*, 323 S.W.3d 588, 598 (Tex. App.—Corpus Christi–Edinburg 2010, pet. ref'd); *Ozuna v. State*, 199 S.W.3d 601, 606

(Tex. App.—Corpus Christi–Edinburg 2006, no pet.); *see Villalon v. State*, 791 S.W.2d 130, 134 (Tex. Crim. App. 1990).

## C.     Analysis

Appellant first states that "the extent of the evidence to support that [Katie's] genitalia was touched by [a]ppellant" consists of Katie's testimony that during the incident in appellant's kitchen, where "[a]ppellant kissed and closely hugged [Katie,]" "their middle-areas touched." Appellant next presents a seemingly contradictory argument that the kitchen incident "did not constitute indecency by contact as contemplated under [the statute] as it was not shown that a part of [a]ppellant's body touched the victim's genitalia." Appellant then lists ten cases arising under particularly egregious facts to argue that the touching in this case "failed to show [a]ppellant made requisite contact with [Katie]'s genitalia with a part of his body." Whether appellant argues that his "middle" never touched Katie's or that there was actual but insufficient contact to constitute indecency with a child by contact, our conclusion is the same: legally sufficient evidence exists to support the trial court's judgment.

Katie testified that she calls the male and female genitalia the "middle parts." Rubio testified that Katie told her that appellant would push his middle part "upwards around her middle part," that she was scared when that happened, and that appellant's "middle part was hard and soft." Katie stated that appellant "squeeze[d]" his middle part into hers on multiple occasions and she detailed at least two such occasions. The first occurred in appellant's kitchen. During that instance, appellant hugged Katie closely, "pressed [Katie's] middle to his," and put his tongue in Katie's mouth. Katie testified that same type

9

of contact occurred on a separate occasion when appellant brought her into his bedroom. On cross examination, appellant's trial counsel asked Katie to clarify that, on that occasion, "[appellant] brings you into his bedroom, locks the door, and then starts pushing his private parts to yours while you're standing up?" Katie answered, "Yes, sir." Finally, appellant's trial counsel explicitly asked Katie whether "[appellant] tr[ied] to touch his private parts to your private parts" on more than one occasion. Katie again answered, "Yes, sir."

In arguing that there was no evidence of multiple instances of sexual contact in this case, appellant correctly highlights that Katie testified that no sexual contact—as defined by the relevant statutes—occurred during the bathroom sink incident in Kenedy or the bunk bed incident at Joy and Ryan's house. Appellant is incorrect, however, when he states that the "extent of the evidence to support that the victim's genitalia was touched by [a]ppellant" was Katie's testimony regarding the inappropriate contact in appellant's kitchen. Appellant discounts Katie's testimony that the same type of contact occurred in appellant's bedroom and that appellant touched her "middle part" more than once. *See Gonzalez*, 522 S.W.3d at 57; *Reckart*, 323 S.W.3d at 598.

Thus, contrary to both of appellant's arguments on appeal, and viewing the evidence in a light most favorable to the verdict, we conclude that a rational factfinder could have found that appellant made sexual contact with Katie on at least two occasions. *See Stahmann*, 602 S.W.3d at 577; *Gonzalez*, 522 S.W.3d at 57; TEX. PENAL CODE ANN. § 21.11(a)(1); TEX. CODE CRIM. PROC. ANN. art. 38.07(b)(1). It matters not that the abusive contact in this case was through clothing and, per appellant's argument, less invasive

than the contact described in the cases he raises on appeal. *See* Tex. Penal Code Ann. § 21.11(c)(1) (proscribing "*any* touching by a person, *including touching through clothing*, of . . . any part of the genitals of a child") (emphasis added).

Appellant does not challenge the trial court's judgment on any other grounds.[3] We overrule both of appellant's issues.

### III. Conclusion

We affirm the trial court's judgment.

DORI CONTRERAS
Chief Justice

Do not publish.
Tex. R. App. P. 47.2 (b).

Delivered and filed on the
9th day of June, 2022.

---

[3] In particular, appellant does not challenge the sufficiency of the evidence that the multiple instances of sexual contact occurred "during a period that is 30 or more days in duration." *See* Tex. Penal Code Ann. § 21.02(b)(1).